IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

METROPCS WIRELESS, INC.,

        Plaintiff,

                                        Civil Action No. 1:09-CV-00601-WDQ

v.

TELECOMMUNICATION SYSTEMS, INC.,

        Defendant.

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION, OR, IN THE ALTERNATIVE, TO STAY

Defendant TeleCommunication Systems, Inc. ("TCS"), by its attorneys, moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to dismiss this action and compel its arbitration through consolidation with the currently pending arbitration between the parties or, in the second alternative, to stay this action until that arbitration is resolved, and in support states:

### STATEMENT OF FACTS

The controversy between the parties arises out of a pair of agreements between TCS and Plaintiff MetroPCS Wireless, Inc. ("MetroPCS") whereby TCS agreed to supply location-based services to MetroPCS for MetroPCS's use in providing Enhanced 9-1-1 and commercial location-based services to its wireless customers. Compl. ¶ 5; *see also* Claimants' Demand for Arbitration ¶ 6.[1] TCS and MetroPCS entered into two contracts pursuant to which TCS agreed to provide these services: the E9-1-1 Network Services Agreement ("E9-1-1 Agreement") and the Network Services Agreement ("NS Agreement")[2] (together, the "Agreements"). Under the

---

[1] A true and correct copy of Claimants' Demand for Arbitration ("Demand") is attached as Exhibit 1 to the Affidavit of Bruce A. White (the "White Affidavit"), which is attached as Exhibit A to this Motion.

[2] A copy of the NS Agreement was attached as Exhibit A to Plaintiff's Complaint. A copy of the E9-1-1 Agreement was attached as Exhibit A to the Demand. *See* White Aff., Exh. 1.

E9-1-1 Agreement, TCS provides MetroPCS location-based services for MetroPCS's use in offering a wireless network that complies with the standards set by the Federal Communication Commission in its program extending 9-1-1 emergency services to wireless communications. *See* Demand ¶¶ 8, 10; *see also* E9-1-1 Agreement § 2 "The Services." Under the NS Agreement, TCS provides MetroPCS location-based services for MetroPCS's use in offering its customers location-based services. *See* Compl. 9; *see also* NS Agreement § 2 "The Services."

The Agreements, both of which involve TCS's provision of location-based services to MetroPCS, are substantially similar in many respects. *See, e.g.,* E9-1-1 Agreement §§1.2, 2.3, 2.4, 4, 5, & 6; NS Agreement §§ 1.2, 2.3, 2.4, 4, 5 & 6. Significant here, the Agreements contain virtually identical provisions providing that TCS will defend and indemnify MetroPCS from third-party intellectual property claims arising out of MetroPCS's use of TCS's products or services. The E9-1-1 Agreement provides:

> **IP Claims**...TCS shall defend, indemnify and hold harmless [MetroPCS] and its officers and directors ... from and against any loss, damage, or liability, including reasonable costs and attorney fees, to the extent that such loss, damage or liability arises out of any third-party claim, suit or allegation that [MetroPCS's] use or sale of any Product or Service pursuant to the terms of this condition infringes the patent, trademark, copyright rights, trade secret rights of [*sic*] other proprietary rights of such third party (collectively the "**IP Claim**").... [MetroPCS] shall not be entitled to any defense, indemnification or the like under this Section to the extent any such IP Claim arises out of [its] unauthorized use, negligent use, or misuse of any Product or Service.

E9-1-1 Agreement § 7.4 (emphasis in original). The NS Agreement provides:

> **IP Claims**...TCS shall defend, indemnify and hold harmless [MetroPCS] and its officers and directors ... from and against any loss, damage, or liability, including reasonable costs and attorney fees, to the extent that such loss, damage or liability arises out of any third-party claim, suit or allegation that [MetroPCS's] use of any product or service provided by TCS under this Agreement ... infringes the patent, trademark, copyright rights, trade secret rights of [*sic*] other proprietary rights of such third party (collectively the "**IP Claim**").... [MetroPCS] shall not be entitled to any defense, indemnification or the like under this Section to the extent any

> such IP Claim arises out of [its] unauthorized use, negligent use, or
> misuse of any TCS product or service.

NS Agreement § 7.4 (emphasis in original).

Both Agreements also contain clauses providing for the settlement of disputes via a non-binding internal mediation procedure. *See* E911 Agreement § 9.2; NS Agreement § 9.2. If the mediation proves unsuccessful, the E9-1-1 Agreement calls for dispute resolution via arbitration. It states that "[i]f a claim, dispute or controversy (a "Dispute") arises out of or relates to this Agreement, or its breach … the Dispute will be decided by arbitration administered by the American Arbitration Association," and further states that, notwithstanding any choice of law provision, the United States Federal Arbitration Act will govern the interpretation and enforcement of the provision. E9-1-1 Agreement § 9.3. The NS Agreement, however, provides that, in the event the mediation fails, "Disputes may be submitted to any federal or state court of competent jurisdiction …." NS Agreement § 9.3.

On October 7, 2008, EMSAT Advanced Geo-Location Technology, LLC and Location Based Services, LLC (collectively, the "Texas Plaintiffs") sued MetroPCS in the United States District Court for the Eastern District of Texas alleging that MetroPCS's wireless telephone network infringes their various patents (the "Texas Litigation"). *See* Compl. ¶¶ 6, 11, 12 & Exh. B (the "Texas Complaint"). The Texas Complaint does not refer to TCS, its products or its services. On March 10, 2009, MetroPCS instituted the present action pursuant to section 7.4 of the NS Agreement, demanding that TCS defend and indemnify MetroPCS in the Texas Litigation. *See* Compl. That same day, MetroPCS filed an identical claim with the American Arbitration Association pursuant to the E9-1-1 Agreement, demanding the TCS defend and indemnify MetroPCS in the Texas Litigation (the "Arbitration"). *See* Demand. TCS now moves to dismiss Plaintiff's Complaint in its entirety or, in the alternative, to dismiss this action and compel its consolidation with the Arbitration currently ongoing between the parties or, in the second alternative, to stay this action pending resolution of the Arbitration.

**ARGUMENT**

## I.     THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.     This Court May Dismiss a Complaint for Failure to State a Claim.

This Court will dismiss a complaint pursuant to Fed. R. Civ. Proc. 12(b)(6) for "failure to state a claim upon which relief can be granted." To withstand dismissal, "the factual allegations of the complaint must be enough to raise a right to relief above the speculative level." *Jacobs v. Venali, Inc.*, 596 F. Supp. 2d 906, 911 (D. Md. 2009) (internal quotation marks omitted); *see also Flanagan v. Anne Arundel County*, 593 F. Supp. 2d 803, 808 (D. Md. 2009) ("To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead plausible, not merely conceivable, facts in support of his claim."). In ruling on such a motion, the court must consider all well pleaded allegations as true and construe the factual allegations in the light most favorable to the plaintiff, but "is not required to accept as true a legal conclusion couched as a factual allegation." *Proctor v. Metropolitan Money Store Corp.*, 579 F. Supp. 2d 724, 731 (D. Md. 2008).

### B.     The Texas Litigation Is Not Within the Scope of the Indemnity Provision of the NS Agreement.[3]

In New York,[4] the right to indemnification "depends upon the specific language of the contract." *Canela v. TLH 140 Perry Street, LLC*, 47 A.D.3d 743, 744 (N.Y. App. 2d Dept. 2008). In construing a provision for contractual indemnification, the Court of Appeals of New York has said:

> Words in a contract are to be construed to achieve the apparent purpose of the parties. Although the words might seem to admit of a larger sense, yet they should be restrained to the particular occasion and to the particular object which the parties had in view. **This is particularly true in indemnity contracts. When a party is under no legal duty to indemnify, a contract assuming that**

---

[3] TCS only addresses whether the Texas Litigation is within the scope of the NS Agreement because that is the Agreement upon which MetroPCS premises its claim in this Court. TCS maintains, and will assert in the Arbitration, that the Texas Litigation also is not within the scope of the virtually identical indemnity provision of the E9-1-1 Agreement.

[4] Section 9.10 of the NS Agreement provides that it shall be "construed and enforced in accordance with the Laws of the State of New York."

> **obligation must be strictly construed to avoid reading into it a
> duty which the parties did not intend to be assumed.**

*Hooper Assoc., Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 905 (N.Y. 1989) (internal

quotation marks and citations omitted) (emphasis supplied).  Indeed, indemnity provisions "must

be interpreted in light of the language and purposes of the entire agreement, and the surrounding

facts and circumstances."  *Mobil Oil Corp. v. Wellpoint Dewatering Corp.*, 110 A.D.2d 1085,

1086 (N.Y. App. 4th Dept. 1985) (internal quotation marks omitted).  Such agreements should

not be read to place upon an indemnitor a burden not assumed expressly or "which it is

inconceivable [he] would have accepted."  *Id.* (quoting *Inman v. Binghamton Housing Auth.*, 143

N.E. 2d 895, 901 (N.Y. 1957)).

      The indemnification provision of the NS Agreement provides that "TCS shall defend,

indemnify and hold harmless" MetroPCS "from and against any loss, damage, or liability … to

the extent such loss, damage or liability arises out of any third-party claim, suit or allegation"

that MetroPCS's "use of any product or service provided by TCS under this Agreement"

infringes the patent of the third-party.  *See* NS Agreement § 7.4.  By its plain terms, for the

Texas Litigation to come within the scope of the indemnification provision, the Texas Plaintiffs

must allege that MetroPCS's use of TCS's products or services infringes its patents.  The Texas

Complaint, however, is devoid entirely of any mention of TCS or TCS's products or services.

No where in the Texas Complaint do the Texas Plaintiffs allege that TCS, its products, or its

services, infringe its patents.  Rather, the Texas Plaintiffs specifically allege that **MetroPCS**

"operates an infringing cellular telephone network" and that **MetroPCS's** use and sale of

location-based services infringes its patents.  *See* Compl., Exh. B at ¶¶ 10, 16.  Indeed, the

allegation that TCS's products or services infringes the patents of the Texas Plaintiffs originates

with MetroPCS, **not** the Texas Plaintiffs[5], in a self-serving attempt by MetroPCS to transform

the allegations of the Texas Complaint into an "IP Claim" under the NS Agreement.  But TCS

---

[5] The Texas Plaintiffs do not seem to fear litigation; if they believed that TCS's products or services infringed their patents, they could, and undoubtedly would, have sued TCS directly.  But they did not and the reason is simple: **TCS's** products and services do not infringe the patents.

did not sign on to be MetroPCS's insurer of last resort; TCS agreed to defend and indemnify MetroPCS from any "claim, suit or allegation" that MetroPCS's use of **TCS's** products or services violates a third-party's intellectual property rights. The Texas Plaintiffs make no such allegation. As such, the Texas Litigation is not an "IP Claim" and TCS is under no obligation to defend or indemnify MetroPCS. Accordingly, MetroPCS's Complaint should be dismissed. *See Sumba v. Clermont Park Assoc., LLC*, 45 A.D.3d 671, 672–73 (N.Y. App. 2d Dept. 2007) (upholding judgment dismissing contractual indemnification claim because third party's claims were not "specifically include[d]" in the indemnification provision and it was not the "unmistakable intent of the parties" to indemnify in such circumstance); *Vigliarolo v. Sea Crest Const. Corp.*, 16 A.D.3d 409 (N.Y. App. 2d Dept. 2005) (same).

### C.   Plaintiff's Claims Are Premature.

Plaintiff's Complaint also should be dismissed for the independent reason that its claims are premature. Indemnification claims generally do not accrue until the party seeking indemnification has made payment to the injured person. *McDermott v. New York*, 406 N.E.2d 460, 461 (N.Y. 1980) (stating "this principle stems from the nature of indemnification claims and does not vary" according to the underlying claims "for which indemnification is sought"); *see also Varo, Inc. v. Alvis PLC*, 261 A.D.2d 262, 265 (N.Y. App. 1st Dept. 1999) ("It is well settled that a cause of action based upon a contract of indemnification does not arise until liability is incurred by way of actual payment.") (quoting *Travelers Indem. Co. v. LLJV Dev. Corp.*, 227 A.D.2d 151, 154 (N.Y. App. 1st Dept. 1996)). Even when the provision at issue provides for indemnification against "liability" in addition to "loss," it is established that such agreements "become enforceable when the liability is fixed...." *Goodridge v. Harvey Group, Inc.*, 778 F. Supp. 115, 133 (S.D.N.Y. 1991). Thus, until MetroPCS makes payment or is found liable to the Texas Plaintiffs, the claim for indemnification is premature.[6]

---

[6] Nor is MetroPCS entitled to a "conditional judgment" on the issue of indemnification pending outcome of the Texas Litigation. This exception to the "rule[] that until payment is made to the claimant there is no cause of action for indemnification[] arises where indemnification is asserted in a third-party action" or where the would-be indemnitee brings its claim "on behalf of" another party pursuant to a liquidation agreement containing an admission

Furthermore, unlike in the insurance context, the contractual duty to defend is no broader than the contractual duty to indemnify. *Cannavale*, 158 A.D.2d at 646; *see also Rodriguez v. Savoy Boro Park Assoc. Ltd. Partnership*, 304 A.D.2d 738, 739 (N.Y. App. 2d Dept. 2003). Where the indemnitor's duty to indemnify has not been established, any declaration of the would-be indemnitor's duty to defend is "inappropriate." *Cannavale*, 158 A.D.2d at 647. Here, MetroPCS's claim for indemnification is premature because it has neither made payment to the Texas Plaintiffs nor been found liable. Until TCS's duty to indemnify MetroPCS is established, it would be inappropriate to determine that TCS has a duty to defend MetroPCS. *See e.g., Bryde v. CVS Pharmacy*, 2009 WL 1154084, at *1 (N.Y. App. 2d Dept. Apr. 28, 2009) (holding there should be no judgment on duty to defend where duty to indemnify not yet established); *Steuhl v. Home Therapy Equip., Inc.*, 51 A.D.3d 1101, 1105 (N.Y. App. 3d 2008) (same); *Brasch v. Yonkers Const. Co.*, 306 A.D.2d 508, (N.Y. App. 2d Dept. 2003) (same). Accordingly, MetroPCS's claims regarding the duty to defend similarly are premature. MetroPCS's Complaint should be dismissed.

## II. IN THE ALTERNATIVE, THIS ACTION SHOULD BE DISMISSED AND ITS CONSOLIDATION WITH THE ONGOING ARBITRATION BETWEEN THE PARTIES COMPELLED.

### A. Where a Valid Arbitration Agreement Exists Governing the Issue Subject to Litigation, the Litigation Must be Dismissed and Arbitration Compelled.

Section 3 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16, provides that "if any suit or proceeding be brought … upon any issue referable to arbitration under an agreement in writing for such arbitration, the court … **shall** on application of one of the parties stay the trial of the action until such arbitration has been had …." (emphasis supplied). Thus, "[a] district court … has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002); *see also United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001). Notwithstanding the language of this provision, in the Fourth Circuit, when the claims in

---

of the indemnitee's liability, neither of which is the situation here. *Mars Assoc., Inc. v. New York City Educ. Const. Fund*, 126 A.D.2d 178, 191–92 (N.Y. App. 1st Dept. 1987).

a lawsuit are required to be arbitrated, "dismissal, rather than a stay, is the proper remedy." *Payton v. Nordstrom, Inc.* 462 F. Supp. 2d 706, 709 (M.D.N.C. 2006); *see also Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001); *A&G Coal Corp. v. Integrity Coal Sales, Inc.*, 600 F. Supp. 2d 709, 716–17 (W.D. Va. 2009).

### B.     The E9-1-1 Arbitration Provision Bears a Significant Relationship to the Issues of this Litigation.

"In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendants to arbitrate the dispute." *Adkins*, 303 F.3d at 500–01. Each of these elements is present here:  (1) the parties dispute whether the indemnification provisions of the Agreements apply to the Texas Litigation; (2) the E9-1-1 Agreement contains a valid and enforceable arbitration provision (which MetroPCS has already invoked); (3) both Agreements involve interstate commerce in that TCS, a Maryland corporation, provides products and services to MetroPCS in  a number of major metropolitan areas across the United States; and (4) as evidenced by its filings with this Court, MetroPCS refuses to consolidate this action with the ongoing Arbitration.  Accordingly, this action should be dismissed and its consolidation with the ongoing Arbitration compelled.

It is of no moment that the arbitration provision is included the E9-1-1 Agreement and not the NS Agreement.  A broadly worded arbitration clause in one contract may extend to a dispute arising under another contract when the dispute "significantly relates" to the agreement containing the arbitration clause. *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996); *see also Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) ("In *American Recovery*, we held that a broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained.").  Thus, when the

arbitration clause is worded broadly—such as providing for the arbitration of disputes controversies or claims "arising out of," "related to," or "in connection with" a particular agreement—"the test" whether the arbitration provision applies "is not whether a claim arose under one agreement or another, but whether a significant relationship exists between the claim and the agreement containing the arbitration clause." *Am. Recovery*, 96 F.3d at 93–94; *see also J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 319 (4th Cir. 1988) (equating the phrases "in connection with" and "arise out of or in relation to," and determining that a clause calling for the arbitration of all disputes "arising in connection with" an contract "embraces every dispute between the parties having a significant relationship to the contract").

The E9-1-1 Agreement arbitration provision states that "[i]f a claim, dispute or controversy … arises out of or relates to this Agreement, or its breach … the Dispute will be decided by arbitration…." E9-1-1 Agreement § 9.3. This is the exact same language that the Fourth Circuit has found is "capable of an expansive reach" beyond the agreement in which it appears. *Am. Recovery*, 96 F.3d at 93 (clause providing for the arbitration of any dispute that "arose out of or related to" the agreement); *see also Long*, 248 F.3d at 316 (clause calling for arbitration of "any dispute arising out of or relating to this Agreement"). Accordingly, the test of arbitrability "is not whether [the] claim arose under" the E9-1-1 Agreement, but "whether a significant relationship exists between the claim and the [E9-1-1 Agreement]." *Am. Recovery*, 96 F.3d at 94; *see also J.J. Ryan & Sons*, 863 F.2d at 321.

The E9-1-1 Agreement bears a significant relationship to the issues and claims presented in this Action. The gravamen of MetroPCS's Complaint in this Court is that the claims asserted against it in the Texas Litigation are "IP Claims" under the NS Agreement and, therefore, it is entitled to defense and indemnification from TCS. *See* Compl. ¶¶ 5, 6. The gravamen of MetroPCS's Demand for Arbitration is the exact same, except that MetroPCS relies upon the E9-1-1 Agreement, rather than the NS Agreement. *See* Demand ¶¶ 6, 7. The definition of IP Claim and the indemnification provisions of the E9-1-1 and NS Agreements are the same in all relevant respects. *Compare* NS Agreement § 7.4, *with* E9-1-1 Agreement § 7.4. Thus, the

central question to be answered in the two proceedings is the same: whether the allegations in the Texas Litigation are IP Claims within the scope of the indemnification provisions of the parties' Agreements. The analyses required to answer this question under each Agreement necessarily are intertwined, as would be any relief in the event it were awarded. The E9-1-1 Agreement, and its interpretation and enforcement during the Arbitration, bears a significant relationship to the issues to be decided in this litigation; as such, this action should be dismissed and its arbitration compelled through consolidation with the ongoing Arbitration. *See, e.g., Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566 (4th Cir. 1998) (compelling arbitration when parties' dispute regarding first contract fell within scope of broad arbitration provision of second contract).

### C.   Compelling Arbitration Comports with the Strong Federal Policy Favoring Arbitration.

In addition, compelling arbitration of this action is consistent with what the Supreme Court has termed its "healthy regard for the federal policy favoring arbitration," pursuant to which "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Long*, 248 F.3d at 316 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). Thus, there exists a "heavy presumption of arbitrability," which requires that "when the scope of the arbitration clause is open to a question, a court must decide the question in favor of arbitration." *Am. Recovery*, 96 F.3d at 92 (internal quotation marks omitted). Here, although the NS Agreement **permits** MetroPCS to bring a claim in Maryland federal or state court, it does not require it. *See* NS Agreement § 9.3 (providing disputes "**may** be submitted" to a court of competent jurisdiction) (emphasis supplied). Furthermore, by filing its Demand, MetroPCS already has manifested a willingness to have the exact same issues decided in arbitration. As such, compelling arbitration would not necessarily be "inconsistent" with the parties' intent. *See Am. Recovery*, 96 F.3d at 94 (noting "the intentions of parties to an arbitration agreement are generously construed in favor of arbitrability"). These factors, the permissible language of the Dispute provision of the NS

Agreement and MetroPCS's willingness to submit the issues here to arbitration, taken with the "strong federal policy favoring arbitration," all weigh in favor of compelling arbitration. *See, e.g., Cara's Notions*, 140 F.3d at 571–72 (holding that even if the scope of the arbitration clause were ambiguous, "the strong federal policy favoring arbitration" would "direct [the court] to order arbitration").

III.   **IN THE SECOND ALTERNATIVE, THIS ACTION SHOULD BE STAYED PENDING RESOLUTION OF THE ONGOING ARBITRATION BETWEEN THE PARTIES.**

   A.   **Staying This Action Is Within the Discretion of This Court.**

Even if this Court determines arbitration should not be compelled, it is within this Court's discretion to stay this action until the related Arbitration currently pending before the American Arbitration Association is resolved. "The power of a district court to stay proceedings is an offshoot of a court's inherent power to control its docket" and is "purely discretionary." *In re Mid-Atlantic Toyota Antitrust Litigation*, 92 F.R.D. 358, 359 (D. Md. 1981); *Climax Molybdenum Co. v. M/V Seatrain Antwerp*, 51 B.R. 192, 194 (D. Md. 1984) ("The decision to grant a stay in a proceedings is within the inherent power of the trial court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (internal quotation marks omitted). A district court may stay litigation pending the resolution of a related arbitration, even if the litigation involves issues not otherwise committed to arbitration. *United States for the Use and Benefit of MPA Constr. Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 940 (D. Md. 2004) ("[W]hen the issues before a district court are not issues referable to arbitration, the court, while not required to stay the litigation, has the discretionary power to do so.") (internal quotation marks omitted); *see also Summer Rain v. The Donning Co./Publishers Inc.*, 964 F.2d 1455, 1461 (4th Cir. 1992) (staying litigation of non-arbitrable issues pending arbitration when arbitrable issues had potential to be dispositive of non-arbitrable issues).

**B.   Staying This Action Is in the Best Interests of this Court and the Litigants.**

A district court's discretionary power to stay litigation that involves both arbitrable and non-arbitrable issues is based, in part, on the recognition that federal policy strongly "favors expeditious resolution of disputes through arbitration." *Institute of Mission Helpers of Balt. City v. Reliance Ins. Co.*, 812 F. Supp. 72, 76 (D. Md. 1992); *see also Davidson v. Becker*, 256 F. Supp. 2d 377, 380 (D. Md. 2003) (identifying the "federal policy which strongly favors arbitration" as the "background principle in analyzing arbitration issues"). In exercising its discretion to stay litigation pending related arbitration, this Court takes into account considerations of judicial economy, efficiency, the effect on the litigants, and the risk of inconsistent results. *See, e.g., Am. Home Assurance Co. v. Vecco Concrete Constr. Co., Inc.*, 629 F.2d 961, 964 (4th Cir. 1980) (staying litigation pending resolution of related arbitration in light of "considerations of judicial economy and avoidance of confusion and possible inconsistent results"); *MPA Constr. Co.*, 349 F. Supp. 2d at 942 (staying litigation pending resolution of related arbitration for reasons of judicial economy and because to do so would not cause delay); *Institute of Mission Helpers*, 812 F. Supp. at 76 (staying litigation pending resolution of related arbitration because of federal policy favoring arbitration and because "a stay would conserve judicial resources and avoid anomalous results").

It simply makes no sense for this action and the Arbitration to proceed simultaneously. As discussed, the gravamen of MetroPCS's Complaint and MetroPCS's Demand for Arbitration is the same. *Compare* Compl. ¶¶ 5, 6, *with* Demand ¶¶ 6, 7. MetroPCS asserts the exact same causes of action and requests the same relief. *Compare* Compl. Part V.A–C, *with* Demand Part V.A–C. The indemnification provisions in the Agreements are the same in all relevant respects. *Compare* NS Agreement § 7.4, *with* E9-1-1 Agreement § 7.4. The central question to be answered in the two proceedings is the same. To permit both this Action and the Arbitration to proceed in order to decide the same question between the same parties and to disallow the same relief would be inefficient and would waste valuable resources of both this Court and the parties. The Court would expend time and money entertaining motions, making determinations, issuing

scheduling orders, holding conferences and otherwise administering the case, while at the same time a panel of arbitrators did the same. Also at the same time, the parties each would be bearing the cost of the arbitrators and the duplicative work of its attorneys. *See MPA Const. Co.*, 349 F. Supp. 2d at 941 ("It seems grossly inefficient to have the parties arbitrate and litigate at the same time or bear unnecessary expense....") (quoting *U.S. ex rel Ranner v. Daco Constr. Inc.*, 38 F. Supp. 2d 1299, 1304–05 (N.D. Okla. 1999)).

Permitting the proceedings to move forward in parallel also risks inconsistent or anomalous results. In each case, it must be determined whether the allegations of the Texas Litigation are within the scope of the indemnification provisions of the Agreements. And, although TCS maintains that its duty pursuant to the indemnification provisions of the Agreements properly may be determined in a motion to dismiss, if TCS is not successful in its argument, then both proceedings undoubtedly will require extensive discovery into the products and services TCS provides MetroPCS, MetroPCS's use of those products and services, and whether the allegedly infringing activity results from that use. These common questions of fact, and the risk that they will be decided inconsistently, "militate[s] in favor" of staying the litigation. *Am. Home Assurance Co.*, 629 F.2d at 964 (staying litigation pending arbitration "since questions of fact common to all actions pending" were "likely to be settled during the ... arbitration").[7]

Finally, there is little concern of delay in a resolution of Plaintiff's claims since the Arbitration, which generally is favored for its expeditious resolution of disputes, *see Institute of Mission Helpers*, 812 F. Supp. at 76, will determine the same question presented in this litigation and already is underway. Furthermore, as the Court controls its own docket, it is in the position

---

[7] To the extent that issues decided in the Arbitration can inform this Court's determination of non-arbitrable issues, that fact weighs in favor of staying the litigation pending resolution of those issues in Arbitration. *See Summer Rain*, 964 F.2d at 1461 (staying litigation of non-arbitrable issues pending arbitration when arbitrable issues had potential to be dispositive of non-arbitrable issues); *see also Crown Central*, 102 F.R.D. at 98 (staying litigation pending resolution of administrative proceedings because, even if administrative proceedings did not "dispose entirely of the issues" before the court, "they will undoubtedly be of help in focusing the issues here and in permitting a more rational resolution by the Court of the dispute between the[] parties").

to lift the stay and reinitiate these proceedings if it at any time deems such action is warranted. *See Am. Home Assurance Co.*, 629 F.2d at 964.

### CONCLUSION

For all the foregoing reasons, TCS respectfully requests that its Motion be granted and that this action be dismissed in its entirety for failure to state a claim or, in the alternative, dismissed and arbitration compelled through consolidation with the ongoing arbitration between the parties which will decide the same issues as are presently before this Court, or, in the second alternative, stayed pending resolution of that arbitration.

/s/
Hugh J. Marbury (Fed. Bar No. 24653)
Emily T. Wright (Fed. Bar No. 28343)
DLA PIPER LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)

Attorneys for Defendant TeleCommunication Systems, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of May, 2009, a copy of the foregoing Motion, Memorandum in Support, and Proposed Orders was served on all parties by electronic filing with the Clerk of the United States District Court for the District of Maryland.

/s/
Hugh J. Marbury