IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| METROPCS WIRELESS, INC.,<br><br>           Plaintiff,<br><br>v.<br><br>TELECOMMUNICATION SYSTEMS, INC.,<br><br>           Defendant. | Civil Action No. 1:09-CV-00601-WDQ |

## DEFENDANT TELECOMMUNICATION SYSTEMS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION, OR, IN THE ALTERNATIVE, TO STAY

Despite the histrionics and hyperbole of its Opposition, MetroPCS Wireless, Inc. ("MetroPCS") fails to provide a single persuasive reason why this Court should waste one more moment entertaining its Complaint. Rather, MetroPCS's Complaint should be dismissed for failure to state a claim upon which relief can be granted for the independent reasons that (1) the allegations in the underlying litigation do not fall within the clear terms of the indemnification provision; and (2) MetroPCS's claims are premature. In the alternative, this Court should compel arbitration of this dispute because the issues presented herein bear a significant relationship to an agreement between the parties containing an arbitration provision. Finally, in the second alternative, if this Court determines that arbitration should not be compelled, this Court nonetheless should stay this litigation because the issues to be determined in a related arbitration between the parties are the same issues to be determined here, and, as such, considerations of judicial economy, efficiency, the effect on the litigants, and the avoidance of conflicting results counsel in favor of a stay pending resolution of the arbitration. In no event, however, should this case go forward in this Court.

I.    **METROPCS HAS FAILED TO STATE A CLAIM FOR DEFENSE OR INDEMNIFICATION.[1]**

   A.    **MetroPCS's Self-Serving Attempt to Equate TCS's Services under the NS Agreement With "Location-Based Services" as Used in the Texas Complaint Is Unavailing.**

   The clear and unambiguous terms of the indemnification provision of the NS Agreement[2] provides that "TCS shall defend, indemnify, and hold harmless" MetroPCS "from and against any loss, damage or liability … to the extent such loss, damage or liability arises out of any third-party claim, suit or allegation" that MetroPCS's "**use of any product or service provided by TCS** under this Agreement" infringes the patent of a third party. *See* NS Agreement § 7.4 (emphasis supplied). MetroPCS does not—and cannot—dispute that the Texas Plaintiffs do not allege anywhere in their complaint that TCS, its products, or its services infringe their patents. In an attempt to avoid this fatal fact, MetroPCS paints with a broad brush, using the generic phrase "location-based services" to characterize the products and services that TCS provides under the NS Agreement. *See, e.g.,* Opp. at 7–8.   It is clear, however, from both the Texas Complaint and MetroPCS's own Complaint and Opposition, that the "location-based services" which MetroPCS supplies its customers and which the Texas Plaintiffs allege infringe their patents are **not** what TCS provides pursuant to the NS Agreement.

   The Texas Plaintiffs, in their complaint, and MetroPCS, in its Complaint and its

---

[1] MetroPCS accuses TCS of filing an "improper dispositive motion" because it relies upon "extraneous materials and evidence." *See* Opp. at 39.   Only Part I of TCS's Motion is a motion to dismiss pursuant Rule 12(b)(6) for failure to state a claim upon which relief can be granted and, accordingly, in that portion of its Motion, TCS only relies upon the Complaint and documents attached to it, namely, the NS Agreement and the Texas Complaint. *See* Compl. Exhs. A & B; *see also* TCS's Motion Part I; *infra* Part I.  Part II of TCS's Motion is styled a motion to dismiss and compel arbitration because dismissal is the procedural device the Fourth Circuit utilizes in such circumstances. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001); *A&G Coal Corp. v. Integrity Coal Sales, Inc.* 600 F. Supp. 2d 709, 716–17 (W.D. Va. 2009); *Payton v. Nordstrom, Inc.*, 462 F. Supp. 2d 706, 709 (M.D.N.C. 2006).   Courts of this Circuit have recognized, however, that a motion to compel arbitration "exist[s] in the netherworld between a motion to dismiss and a motion for summary judgment" and that "in order to effectively assess the merits" of such a motion, it may be necessary to consider documents outside the pleadings. *See Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683–84 (D. Md. 2004).   In such circumstances, the court may convert the motion to one for summary judgment. *Id.*   Indeed, if any party to this litigation has made an "improper dispositive motion," it is MetroPCS, which at various points in its Opposition asks this Court for an affirmative ruling that "TCS has a duty to defend, indemnify and hold harmless MetroPCS against the claims asserted against MetroPCS" in the Texas Litigation." *See, e.g.,* Opp. at 1.

[2] TCS adopts the terminology used in its Motion.

Opposition, define "location-based services" the same way.  The Texas Plaintiffs describe "location-finding technology," which creates "location-aware networks that can determine the exact geographic locations of telephones," which networks are then used to provide "commercial location-based services," such as enabling "the cell phone user to use his or her cell phone as a navigation device, to locate nearby products and services, and to find friends, among other things." Texas Compl. ¶¶ 13, 15.  Similarly, MetroPCS states:

> Location-based services technology utilizes the geographic positioning of a mobile device to identify the location of the mobile user and, based on this information, provides access to a wealth of information regarding businesses, persons and objects in that area.  For example, with increasing popularity, mobile users are employing location-based services to locate food, lodging, and entertainment in the area, access information about current traffic conditions and alternate routing, and location friends and family.

Opp. at 8–9; *see also* Compl. ¶¶ 7, 8.    TCS does not provide "location-based services" as defined by the Texas Plaintiffs or MetroPCS—a fact that MetroPCS effectively admits in its Opposition.  Indeed, MetroPCS is careful to state  that TCS provides products and services "necessary" for **MetroPCS to provide** location-based services to its customers. *See, e.g.*, Opp. at 2 ("MetroPCS contracted with TCS for TCS to provide the products and services **to allow MetroPCS to offer location-based services** to its network customers.") (emphasis supplied); *id.* at 2–3 ("Under the Network Services Agreement, TCS has been supplying MetroPCS the products and services **necessary for it to provide location-based services** to its customers.") (emphasis supplied); *id.* at 7 ("There is no dispute that, under the Network Services Agreement, TCS agreed to provide the necessary products and services **for MetroPCS to offer 'location-based services'** to its customers.") (emphasis supplied).

Thus, as is implicit in MetroPCS's own papers, but as MetroPCS carefully refuses to acknowledge explicitly, the products and services TCS provides under the NS Agreement simply are not the products and services (that is, the "location-based services") that the Texas Plaintiffs

allege infringe their patents.[3]   Accordingly, it is not MetroPCS's "use of any product or service **provided by TCS**" pursuant to the NS Agreement which the Texas Plaintiffs allege infringe their patents and, as such, the allegations of the Texas Plaintiffs do not fall within the indemnification provision of the NS Agreement.   For this reason alone, MetroPCS's Complaint should be dismissed.

**B.      MetroPCS's Indemnification Claims Are Premature Because MetroPCS has Not Been Found Liable and the Facts Necessary to Whether the Indemnification Provision Applies Must Be Determined in the Texas Litigation.**

MetroPCS does not dispute, because it cannot, that in New York, indemnification claims do not accrue until the party seeking indemnification has made payment to the injured person or is found liable.   *See, e.g., Varo, Inc. v. Alvis PLC*, 261 A.D.2d 262, 265 (N.Y. App. 1st Dep. 1999) ("It is well settled that a cause of action based upon a contract of indemnification does not arise until liability is incurred by way of actual payment."); *Goodridge v. Harvey Group, Inc.*, 778 F. Supp. 115, 133 (S.D.N.Y. 1991) (holding that an agreement to indemnify for any "claims, losses, liabilities and expenses" becomes enforceable "when the liability is fixed").   MetroPCS has not made payment to the Texas Plaintiffs and MetroPCS has not been found liable in the Texas Litigation.   Nor does MetroPCS dispute that conditional judgments, an exception to this rule of New York law, typically are entered in limited circumstances.   *See Mars Assoc., Inc. v. New York City Educ. Const. Fund*, 126 A.D.2d 178, 191–92 (N.Y. App. 1st Dep. 1987) (stating conditional judgments can be entered in "third-party actions" or where "the party seeking indemnification was bringing a claim 'on behalf of' another party"); *see also* Opp. at 17 ("[C]onditional judgments on indemnity issues are generally entered in the context of a third-party action under New York law.").   Nonetheless, MetroPCS argues that a conditional judgment is warranted because "the interests of justice and judicial economy so dictate."   Opp. at 17.

Contrary to MetroPCS's assertion, the "interests of justice and judicial economy"—as

---

[3] Indeed, TCS does **not** provide products or services which enable MetroPCS to provide its customers with the capability to " locate nearby products and services" or "to find friends, among other things."  Texas Compl. ¶ 15.

well as established New York law—militate **against** entering a conditional judgment here.  In the event that this Court does not determine that the claims of the Texas Litigation are outside the terms of the indemnity provision, as argued *supra*, then MetroPCS's Complaint still should be dismissed as premature because there are important questions that must be determined in the underlying litigation before the question regarding TCS's duty under the indemnification provision can be resolved and a conditional judgment rendered.  New York courts routinely hold that even conditional judgments are premature when issues of fact exist as to whether the underlying action falls within the indemnification provision.  *See, e.g., Squires v. Robert Marini Builders, Inc.*, 293 A.D.2d 808, 809 (N.Y. App. 3d Dept. 2002) (holding conditional judgment on contractual indemnity claim premature where question of would-be indemnitee's negligence, which would invalidate indemnification claim, would be determined in underlying litigation); *see also Doherty v. Palmyra-Macedon Central School Dist.*, 286 A.D.2d 950, 950 (N.Y. App. 4th Dept. 2001) (holding conditional judgment on common-law indemnity claim premature where question whether more than one party was responsible for the negligence, which would invalidate the indemnification claim, would be determined in the underlying litigation).  Here, a central issue that will vetted in the Texas Litigation is how the Texas Plaintiffs allege MetroPCS infringes their patents.  Until this is clear, there is no way to determine whether the Texas Plaintiffs allege that it is MetroPCS's "use" of TCS products and services that are doing the infringing and, thus, whether the indemnification provision is triggered.[4]

With respect to the duty to defend, MetroPCS directs this Court to the completely wrong body of New York law.  MetroPCS states that "[t]here is no dispute that, under black-letter New York law, the duty to defend is broader than the duty to indemnify when the party that allegedly owes those duties is an insurer."  Opp. at 19.  TCS has no reason to dispute this point because **TCS is not an insurer**.  It also is "black-letter New York law" that the duty to defend

---

[4] For this same reason, MetroPCS's claim for a declaratory judgment as to TCS's  duty to indemnify also is premature.  *See Statt v. Am. Home Assurance Co.*, 191 A.D.2d 962, (N.Y. App. 4th 1993) ("This declaratory judgment action is premature.  The extent of [the defendant's] duty to indemnify must necessarily depend on the resolution of an issue that, if it arises, will be decided in the underlying action.").

**undertaken pursuant to a contract outside the insurance context** is no broader than the duty

to indemnify. *See, e.g., Cannavale v. County of Westchester*, 158 A.D.2d 645, 646 (N.Y. App.

2d Dept. 1990 ("We agree with [the defendant], **which is not an insurer**, that its duty to defend

is no broader than its duty to indemnify....") (emphasis supplied). And when, as here, the duty

to indemnify pursuant to a contract outside the insurance context has not been established, New

York courts have held that a declaration as to the would-be indemnitor's duty to defend is

"inappropriate." *Id.* at 647; *see also Steuhl v. Home Therapy Equip., Inc.*, 51 A.D.3d 1101, 1105

(N.Y. App. 3d 2008); *Brasch v. Yonkers Const. Co.*, 306 A.D.2d 508, 511 (N.Y. App. 2d Dept.

2003).[5]

## II.   IN THE ALTERNATIVE, ARBITRATION SHOULD BE COMPELLED BECAUSE AN ARBITRATION PROVISION EXISTS WHICH BEARS A SIGNIFICANT RELATIONSHIP TO THE ISSUES OF THIS LITIGATION.

"A district court ... has no choice but to grant a motion to compel arbitration where a

valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins v.*

*Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). As TCS explained in its Motion, in the

Fourth Circuit, a broadly worded arbitration clause in one contract may extend to a dispute

arising under another contract when the dispute "significantly relates" to the agreement

containing the arbitration clause. *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*,

96 F.3d 88, 93 (4th Cir. 1996); *see also* TCS Motion at 8–10. What MetroPCS characterizes as a

---

[5] To the extent MetroPCS argues it is entitled to a declaratory judgment with respect to the duty to defend, as MetroPCS acknowledges, "the decision to grant or deny a petition for declaratory relief is a matter resting in the sound discretion of the trial court." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421 (4th Cir. 1998) (internal quotation marks omitted). The Supreme Court has stated, and the Fourth Circuit has recognized, that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *New Wellington Fin. Corp. v. Flagship Resort Develop. Corp.*, 416 F.3d 290, 296 (4th Cir. 2005) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). Here, for the same reasons that TCS alternatively argues that arbitration should be compelled or this case stayed, *see* TCS's Motion at 7–14, considerations of practicality and wise judicial administration counsel in favor of this Court refraining from exercising its jurisdiction. The ongoing Arbitration between the parties will determine the same issues to be determined here. Courts of this circuit have recognized that it is particularly appropriate for a court to refrain from exercising its declaratory judgment jurisdiction when there is a parallel proceeding between the parties presenting the same issues. *Cf. id.* at 297 (stating the district court's discretion "is especially crucial" when "a parallel or related proceeding is pending in state court," and listing among the factors to be considered whether the state proceeding could resolve issues more "efficiently" and whether there "overlapping issues of fact or law" exist which might create unnecessary "entanglement").

"sweeping proposition" is, in fact, an accurate statement of Fourth Circuit law. *See Am. Recovery*, 96 F.3d at 94 (holding the "test" to determine whether the arbitration provision in a consulting agreement applied to claims arising under a noncircumvention agreement is "whether a significant relationship exists between the claim and the agreement containing the arbitration clause"). Indeed, the Fourth Circuit, speaking in *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001), stated: "In *American Recovery*, we held that a broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." The arbitration provision of the E9-1-1 Agreement contains the same language which the Fourth Circuit has found is "capable of expansive reach." *Am. Recovery*, 96 F.3d at 93; *cf.* E9-1-1 Agreement § 9.3 (stating that "[i]f a claim, dispute or controversy … arises out of or relates to this Agreement, or its breach … the Dispute will be decided by arbitration …."); *with Am. Recovery*, 96 F.3d at 93 (clause providing for the arbitration of any dispute that "arose out of or related to" the agreement); *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 319 (4th Cir. 1988) (equating "in connection with," "arise out of or in relation to," and "arising in connection with" as used in arbitration provision). Accordingly, arbitration may be compelled pursuant to the E9-1-1 Agreement to the extent that it "significantly relates" to the claims and issues presented here.

As TCS set forth in its Motion, the E9-1-1 Agreement bears a significant relationship to the issues and claims presented in this Action because the central issues to be determined in the Arbitration and this Action are the same and, as such, the E9-1-1 Agreement, as well as its interpretation and enforcement during the Arbitration, directly impact this Action. *See* Motion at 9–10. MetroPCS claims that the issues in the ongoing Arbitration and this Action are different because "the Texas Plaintiffs assert that different patents are infringed by different services." Opp. at 27. MetroPCS is wrong. The Texas Plaintiffs allege that MetroPCS's provision of location-based services infringes the '822 and the '763 patents, and that MetroPCS's provision of E9-1-1 services infringes the '611, the '822, and the '763 patents. Texas Compl. Counts I, II &

III.  Therefore, the meaning of all three patents, **including the two patents at issue here**, must be determined in the Arbitration.  Furthermore, the E9-1-1 services and commercial location based services are closely related.  Indeed, as the Texas Plaintiffs have alleged, "commentators have asserted that the FCC-required development of mobile E911 systems allowed wireless carriers, such as [MetroPCS], to develop and deploy commercial location-based services."  Texas Compl. ¶ 15.  Thus, the patents, the Texas Plaintiffs' allegations of infringement by MetroPCS, the role of TCS's products and services in MetroPCS's allegedly infringing activity, not to mention the interpretation and effect of the virtually identical IP Claim and indemnification provisions, all must be determined in the Arbitration and necessarily will impact the resolution of these same questions in this Action.

In determining whether to compel arbitration, Courts of this Circuit are "guided by the strong federal policy favoring arbitrability," and the pronouncement of the Supreme Court that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]"  *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 571, 572 (4th Cir. 1998) (quoting *Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).  MetroPCS's protestations that it may not "be required to submit to arbitration any dispute which he has not agreed so to submit," Opp. at 33, is undermined by the fact that MetroPCS already **has** submitted to arbitration the exact same questions that are presented in this dispute.  The Complaint in this action and the demand for arbitration are mirror images of one another.  Furthermore, the language of the Disputes provision MetroPCS relied upon in filing this claim, Section 9.3 of the NS Agreement, is permissive:  it provides that suit "**may**" be submitted to a Maryland state or federal court.[6]  There is nothing in this provision **prohibiting** the submission of this dispute to arbitration.  The interpretation and enforcement of the E9-1-1 Agreement during the Arbitration necessarily will impact the interpretation and enforcement of

---

[6] By filing suit in this Court, MetroPCS opted not to take advantage of the mandatory language of Section 9.10 of the NS Agreement, providing that suit "shall" be brought in a New York federal or state court, and cannot rely upon it now.

the NS Agreement here; the issues in the two proceedings are intertwined, as would be any relief awarded. The E9-1-1 Agreement bears a significant relationship to and the claims and issues here. This Action should be dismissed and its Arbitration compelled.

## III.   IF THIS ACTION IS NOT DISMISSED OR ITS ARBITRATION COMPELLED, IT SHOULD BE STAYED PENDING RESOLUTION OF THE RELATED ARBITRATION BETWEEN THE PARTIES.

Each of the five factors MetroPCS lists as relevant to the question whether a district court should exercise its discretion to stay litigation pending the resolution of a related arbitration militate in favor of granting the stay. Opp. at 34. MetroPCS's arguments to the contrary are nothing short of absurd. First, MetroPCS will not be prejudiced by a stay because "witnesses relocate, memories fade, and persons allegedly aggrieved are unable to seek vindication or redress for indefinite periods of time on end" as it alleges, Opp. at 34, because the Arbitration, which will decide the exact same claims and issues, will be moving forward while the stay is pending. Second, MetroPCS's argument that the court's consideration of judicial economy refers only to duplicative "judicial effort," ie. duplicative court proceedings, is specious. Opp. at 34; *see Am. Home Assurance Co. v. Vecco Concrete Const. Co.*, 629 F.2d 961, 964 (4th Cir. 1980) (staying litigation pending resolution of related **arbitration** in light of "**considerations of judicial economy** and avoidance of confusion and possible inconsistent results"); *Institute of Mission Helpers of Baltimore v. Reliance Ins. Co.*, 812 F. Supp. 2d 72, 76 (D. Md. 1992) (staying litigation pending resolution of related **arbitration** because "a stay would **conserve judicial resources** and avoid anomalous results"). Third, MetroPCS's allegation that "the general public has a large stake in the outcome of this civil litigation" because "it impacts MetroPCS'[s] provision of specialized cellular telephone services and features to millions of customers" is a red herring. The Texas Plaintiffs are suing MetroPCS for infringement related to MetroPCS's provision of E9-1-1 and location-based services to its customers. If those customers are going to be impacted by the Texas Litigation (which is doubtful), then they will be impacted irrespective of whether TCS defends or indemnifies MetroPCS. Furthermore, even if MetroPCS's customers somehow are impacted by whether TCS defends or indemnifies

MetroPCS (which they are not), then those customers will be no better served by refusing a stay in this case, since the precise same issues will be determined in the Arbitration, which generally is favored for its expeditious resolution of disputes. *See Institute of Mission Helpers*, 812 F. Supp. at 76.[7]

It is within the discretion of this Court to stay this Action pending resolution of the Arbitration, just as it is within this Court's discretion to lift the stay at any time it determines such action is warranted. *See Am. Home Assurance Co.*, 629 F.2d at 964. MetroPCS has not provided one single persuasive reason why a stay should not be granted. Meanwhile, considerations of judicial economy, efficiency, and the avoidance of inconsistent results all weigh in favor of a stay. *See* TCS Motion at 11–14. If this case is not dismissed, then at minimum, it should be stayed.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in its Motion and accompanying Memorandum, TCS respectfully requests that its Motion be Granted.

/s/
_____

Hugh J. Marbury (Fed. Bar No. 24653)
Emily T. Wright (Fed. Bar No. 28343)
DLA PIPER LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)

Attorneys for Defendant TeleCommunication
Systems, Inc.

---

[7] By the same token, MetroPCS's argument that a stay here would be "immoderate" because TCS has made no showing that the Arbitration "will be completed in the near future" is unfounded. Opp. at 35. MetroPCS has made no showing that the Arbitration will not progress expeditiously, nor does TCS have any reason to believe the Arbitration will progress any more slowly than this Action.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of June, 2009, a copy of the foregoing Reply was served on all parties by electronic filing with the Clerk of the United States District Court for the District of Maryland.

_____/s/_____
Hugh J. Marbury
