## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

| | | |
|---|---|---|
| **METROPCS WIRELESS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:09–CV–00601–WDQ** |
| | ) | |
| **TELECOMMUNICATION SYSTEMS, INC.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

# EXHIBIT E [Part 1 of 8]

PLAINTIFF METROPCS WIRELESS, INC.'S MOTION TO TAKE JUDICIAL NOTICE OF DEFENDANT TCS' CONTRADICTORY LITIGATION AND ARBITRATION FILINGS

**AMERICAN ARBITRATION ASSOCIATION**

METROPCS COMMUNICATIONS, INC.
and METROPCS WIRELESS, INC.

*Claimants*

16 494 Y 00165 09

and

TELECOMMUNICATION SYSTEMS,
INC.

*Respondent*

## RESPONDENT TELECOMMUNICATION SYSTEMS, INC.'S
## MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY

TeleCommunication Systems, Inc. ("TCS"), by and through its attorneys, moves to

dismiss in its entirety the Demand for Arbitration ("Demand") filed by Claimants MetroPCS

Communications, Inc. and MetroPCS Wireless, Inc. (collectively, "MetroPCS") or, in the

alternative, to stay this arbitration until the parallel litigation pending in the United States District

Court for the District of Maryland (the "Maryland Litigation") is resolved or consolidated.

In both this action and the simultaneously filed federal lawsuit, MetroPCS seeks defense

and indemnification of claims asserted against it in a patent infringement case currently pending

in the United States District Court for the Eastern District of Texas (the "Texas Litigation").

Because the claims and allegations in the Texas Litigation do not fall within the terms of the

indemnification provisions of MetroPCS's contracts with TCS, and because MetroPCS's claims

are premature, TCS moves to dismiss the Demand in its entirety.

In the alternative, TCS requests that this Panel stay this arbitration because the issues to

be determined in the Maryland Litigation are the same issues to be determined herein and, as

such, considerations of this Panel's resources, efficiency, the effect on parties, and the avoidance

of conflicting results counsel in favor of a stay until the Maryland Litigation is resolved. At the very least, the Panel should stay these proceedings pending Judge Quarles' ruling on TCS's request to consolidate the Maryland Litigation into this proceeding.

For these reasons, as set forth more fully in the accompanying memorandum, TCS respectfully requests that this Panel dismiss MetroPCS's Demand in its entirety or, in the alternative, stay this action until the Maryland Litigation is resolved or consolidated.

Respectfully submitted,

___/s/_____

Hugh J. Marbury
Benjamin D. Schuman
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209-3600
(410) 580-3000

Erica J. Pascal
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, California 92101-4297
(619) 699-2700

*Attorneys for TeleCommunication
Systems, Inc.*

## AMERICAN ARBITRATION ASSOCIATION

METROPCS COMMUNICATIONS, INC.
and METROPCS WIRELESS, INC.

                            *Claimants*

                                                    16 494 Y 00165 09

and

TELECOMMUNICATION SYSTEMS,
INC.

                            *Respondent*

## MEMORANDUM IN SUPPORT OF
## RESPONDENT TELECOMMUNICATION SYSTEMS, INC.'S
## MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY

TeleCommunication Systems, Inc. ("TCS"), by and through its attorneys, moves to dismiss in its entirety the Demand for Arbitration ("Demand") filed by Claimants MetroPCS Communications, Inc. and MetroPCS Wireless, Inc. (collectively, "MetroPCS") or, in the alternative, to stay this arbitration until the parallel litigation pending in the United States District Court for the District of Maryland (the "Maryland Litigation") is resolved or consolidated.

### STATEMENT OF FACTS

The controversy between the parties arises out of a pair of agreements between TCS and MetroPCS whereby TCS agreed to supply certain hosted Position Determining Entity ("PDE") services[1] to MetroPCS for MetroPCS's use in providing Enhanced 9-1-1 and commercial location-based services to its wireless customers. Demand ¶ 6; *see also* Complaint ("Compl.") ¶

---

[1] A PDE, or "position determining entity," utilizes GPS satellite data to determine or assist in the determination of location for a wireless device such as a mobile phone.

5.[2]   The two agreements at issue are the E9-1-1 Network Services Agreement ("E9-1-1 Agreement") and the Network Services Agreement ("NS Agreement") (collectively, the "Agreements"). Copies of the E9-1-1 Agreement and the NS Agreement are attached as Exhibits B and C. Under the E9-1-1 Agreement, TCS provides MetroPCS certain hosted PDE services for MetroPCS's use in offering a wireless network that complies with the standards set by the Federal Communication Commission in its program extending 9-1-1 emergency services to wireless communications. *See* Demand ¶¶ 8, 10; *see also* E9-1-1 Agreement § 2 "The Services." Under the NS Agreement, TCS provides MetroPCS certain hosted PDE services for MetroPCS's use in offering its customers location-based services. *See* Compl. ¶ 9; *see also* NS Agreement § 2 "The Services."

The Agreements, both of which involve TCS's provision of PDE services to MetroPCS, are substantially similar in many respects. *See, e.g.,* E9-1-1 Agreement §§1.2, 2.3, 2.4, 4, 5, & 6; NS Agreement §§ 1.2, 2.3, 2.4, 4, 5 & 6. Significant here, the Agreements contain virtually identical provisions providing that TCS will defend and indemnify MetroPCS from third-party claims that MetroPCS's use of TCS's products or services infringes the intellectual property rights of a third party. The E9-1-1 Agreement provides:

> **IP Claims**…TCS shall defend, indemnify and hold harmless [MetroPCS] and its officers and directors … from and against any loss, damage, or liability, including reasonable costs and attorney fees, to the extent that such loss, damage or liability arises out of any third-party claim, suit or allegation that [MetroPCS's] use or sale of any Product or Service pursuant to the terms of this condition infringes the patent, trademark, copyright rights, trade secret rights of [*sic*] other proprietary rights of such third party

---

[2] MetroPCS filed a parallel lawsuit in the United States District Court for the District of Maryland, styled *MetroPCS Wireless, Inc. v. TeleCommunication Systems, Inc.*, Civ. No. 1:09-CV-00601-WDQ, on March 10, 2009, the same day as the Demand for Arbitration. MetroPCS's nearly identical Complaint in that action is attached as Exhibit A to this Motion.

> (collectively the "**IP Claim**")…. [MetroPCS] shall not be entitled to any defense, indemnification or the like under this Section to the extent any such IP Claim arises out of [its] unauthorized use, negligent use, or misuse of any Product or Service.

E9-1-1 Agreement § 7.4 (emphasis in original). The NS Agreement provides:

> **IP Claims**…TCS shall defend, indemnify and hold harmless [MetroPCS] and its officers and directors … from and against any loss, damage, or liability, including reasonable costs and attorney fees, to the extent that such loss, damage or liability arises out of any third-party claim, suit or allegation that [MetroPCS's] use of any product or service provided by TCS under this Agreement … infringes the patent, trademark, copyright rights, trade secret rights of [*sic*] other proprietary rights of such third party (collectively the "**IP Claim**")…. [MetroPCS] shall not be entitled to any defense, indemnification or the like under this Section to the extent any such IP Claim arises out of [its] unauthorized use, negligent use, or misuse of any TCS product or service.

NS Agreement § 7.4 (emphasis in original).

Both Agreements also contain clauses providing for the settlement of disputes via a non-binding internal mediation procedure. *See* E9-1-1 Agreement § 9.2; NS Agreement § 9.2. If the mediation proves unsuccessful, the E9-1-1 Agreement calls for dispute resolution via arbitration. E9-1-1 Agreement § 9.3. The NS Agreement, however, provides that, in the event the mediation fails, "Disputes may be submitted to any federal or state court of competent jurisdiction …." NS Agreement § 9.3.

On October 7, 2008, EMSAT Advanced Geo-Location Technology, LLC and Location Based Services, LLC (collectively, the "Texas Plaintiffs") sued MetroPCS in the United States District Court for the Eastern District of Texas alleging that MetroPCS's wireless telephone network infringes their various patents (the "Texas Litigation"). *See* Demand ¶¶ 6–7; *see also* Complaint in *EMSAT Advanced Geo-Location Technology, LLC v. MetroPCS Communications, Inc.*, Civ. No. 2:08cv381 (the "Texas Complaint" or "Texas Compl."), attached as Exhibit D. The Texas Complaint makes no reference to TCS, its products or its services.

5

On March 10, 2009, MetroPCS filed the Demand for Arbitration, seeking a declaratory judgment that TCS has an obligation to defend, indemnify and hold harmless MetroPCS with regards to the Texas Litigation pursuant to section 7.4 of the E9-1-1 Agreement, and an order that TCS defend and indemnify MetroPCS in the Texas Litigation. *See* Demand, Prayer at (i)–(iv). On the same day, MetroPCS filed a lawsuit against TCS in the United States District Court for the District of Maryland styled *MetroPCS Wireless, Inc. v. TeleCommunication Services, Inc.* (the "Maryland Litigation"), demanding that TCS defend and indemnify MetroPCS in the Texas Litigation pursuant to section 7.4 of the NS Agreement. *See* Compl., Prayer at (i)–(iv). On May 26, 2009, TCS filed a motion in the Maryland Litigation requesting that the proceeding be dismissed because the Texas Litigation does not qualify as an "IP Claim" under the indemnification provision of the NS Agreement and that it is premature, or in the alternative that the proceeding be stayed pending resolution of this Arbitration, or be consolidated into this Arbitration. That motion is awaiting a ruling by Judge Quarles. TCS now moves to dismiss Claimant's Demand in its entirety or, in the alternative, to stay this action pending resolution of the Maryland Litigation.

## ARGUMENT

## I. THE DEMAND FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. This Panel May Dismiss a Demand for Failure to State a Claim

This Panel may dismiss a Demand on a dispositive preliminary motion, especially where such a dismissal would "dramatically curtail the whole proceeding." *See* John Wilkinson, "Streamlining Arbitration of the Complex Case," *in American Arbitration Association Handbook on Commercial Arbitration* 107, 109 (Thomas E. Carbonneau & Jeannette A. Jaeggi eds., 2006).

The basis for this Motion to Dismiss is analogous to a motion under Rule 12(b)(6) of the

Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." The Supreme Court has recently clarified the standard of review under Rule 12(b)(6) by describing a "two-pronged approach." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). First, a court identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Second, "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

## B.    The Texas Litigation Is Not Within the Scope of the Indemnity Provision of the E9-1-1 Agreement[3]

In Delaware,[4] indemnity provisions are interpreted in accordance with basic contract principles: contracts are construed to give effect to the parties' intent; the parties' intent must be discerned from the clear and unambiguous language of the provision; and a court will only look to collateral sources if the terms are ambiguous. *See Citadel Holding Corp. v. Roven*, 603 A.2d 818 (Del. 1992). If there is a dispute over the interpretation of an indemnity provision, a dispositive order is nonetheless appropriate "where [a party's] interpretation of a contract is the only reasonable one." *See Stockman v. Heartland Indus. Partners, L.P.*, 2009 WL 2096213 at *4 (Del. Ch. July 14, 2009).

---

[3] TCS only addresses whether the Texas Litigation is within the scope of the E9-1-1 Agreement because that is the Agreement upon which MetroPCS premises its claim in this arbitration. TCS maintains, and has asserted in the Maryland Litigation, that the Texas Litigation also is not within the scope of the virtually identical indemnity provision of the NS Agreement.

[4] Section 9.10 of the E9-1-1 Agreement provides that it shall be "construed and enforced in accordance with the Laws of the State of Delaware."

It is well settled in Delaware that indemnity provisions should be construed so that "only losses which reasonably appear to have been intended by the parties are compensable under such contract." *Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.*, 394 A.2d 1160, 1165 (Del. 1978) (citing 41 Am. Jur. 2d *Indemnity* § 13). Accordingly, once parties to a contract have set forth a party's indemnity liability under that contract, "there is no room for any enlargement of that obligation by implication." *Rock v. Delaware Elec. Co-Op., Inc.*, 328 A.2d 449, 453 (Del. Super. Ct. 1974).

The indemnification provision of the E9-1-1 Agreement provides that "TCS shall defend, indemnify and hold harmless [MetroPCS] . . . from and against any loss, damage, or liability … to the extent such loss, damage or liability arises out of any third-party claim, suit or allegation that [MetroPCS's] use of any Product or Service" infringes the patent of the third-party. *See* E9-1-1 Agreement § 7.4. By its plain terms, for the Texas Litigation to come within the scope of the indemnification provision, the Texas Plaintiffs must allege that MetroPCS's use of TCS's products or services infringes its patents.

The Texas Complaint, however, is devoid entirely of any mention of TCS or TCS's products or services. Nowhere in the Texas Complaint do the Texas Plaintiffs allege that TCS, its products, or its services, infringe its patents. Rather, the Texas Plaintiffs specifically allege that **MetroPCS** "operates an infringing cellular telephone network" and that **MetroPCS's** use and sale of location-based services infringes its patents. *See* Texas Compl. at ¶¶ 10, 16. Indeed, the allegation that TCS's products or services infringe the patents of the Texas Plaintiffs originates with MetroPCS, **not** the Texas Plaintiffs, in a self-serving attempt by MetroPCS to transform the allegations of the Texas Complaint into an "IP Claim" under the E9-1-1 Agreement. The parties could not have intended that indemnification liability should attach

solely at the selection of MetroPCS.

Absent any references to TCS in the Texas Complaint, MetroPCS has attempted to oversimplify the allegations in the Texas Complaint in order to suggest that the services provided to MetroPCS by TCS are identical to the systems the Texas Plaintiffs allege are infringing their patents, thereby triggering TCS's indemnification duties. *See* Demand ¶ 16 ("[Texas] Plaintiffs' patent infringement allegations arise out of MetroPCS' 'use or sale' of TCS' wireless enhanced 9-1-1 technology—the precise service MetroPCS contracted for under the E9-1-1 Agreement."). Such oversimplification, however, is undermined by a simple comparison of the Texas Complaint and the services provided under the E9-1-1 Agreement, both of which are properly before this Panel as attachments to the Demand. According to the Texas Complaint, the patents in question "relate to systems and methods for ***combining*** certain features of cellular, or 'wireless,' telephone systems ***with location-finding technology*** to create location-aware networks that can determine the exact geographic locations of telephones and, in turn, use that information to improve network operations." Texas Compl. ¶ 13 (emphasis added). The patents "allow for increased accuracy in determining the location of a mobile phone for the purpose of transmitting location information to nearby emergency call centers, known as 'Public Safety Answering Points' ('PSAPs')." *Id.*

This is certainly not the "precise service" that TCS provides to MetroPCS, as MetroPCS alleges. *See* Demand ¶ 16. TCS does not build, operate, or provide cellular networks. Rather, TCS provides MetroPCS with services regarding Position Determination Entity ("PDE") functionality. *See* E9-1-1 Agreement, Schedule 3. Essentially, TCS provides MetroPCS with "location-finding" services, which MetroPCS then combines with other "features of cellular, or 'wireless,' telephone systems" in order to create the sort of E9-1-1 system that allegedly

infringes the patents referenced in the Texas Complaint. Furthermore, at most, the services provided to MetroPCS by TCS are encompassed by prior art to the patents at issue in the Texas Litigation. TCS's contribution, therefore, cannot be the basis for the alleged infringement in the Texas Litigation and thus, cannot be grounds for indemnification under the plain language of the E9-1-1 Agreement.

Courts from around the country have held that where a buyer or licensee of technology or services uses the seller's or licensor's technology or services in a larger system that is alleged to infringe the patent of a third party, the buyer or licensee cannot pass that potential liability onto the seller or licensor who merely provided one piece of the overall system. *See, e.g.*, *Phoenix Solutions, Inc. v. Sony Elec., Inc.*, --- F. Supp. 2d ----, 2009 WL 1604700 at *14 (N.D.Cal. June 5, 2009) (holding that "a buyer should not use a seller's component in a system that results in infringement liability to a patentee, and then simply pass the liability to the seller of the single component"); *Chemtron, Inc. v. Aqua Products, Inc.*, 830 F. Supp. 314, 315 (E.D.Va. 1992) (holding that "a buyer . . . should not be entitled to purchase goods from a seller . . . which are not subject to any infringement action, use the non-infringing component goods in an infringing device and incur liability to a third party patentee . . . and then turn around and attempt to impose liability on the original seller of the component parts"); *Motorola v. Varo, Inc.*, 656 F. Supp. 716 (N.D.Tex. 1986) (holding that requiring indemnification of buyer's use of seller's technology in a larger system would be a "warranty as to conduct, not as to goods").[5]

---

[5] Indeed, the E9-1-1 Agreement specifies that MetroPCS "shall not be entitled to any defense, indemnification or the like under this Section to the extent any such IP Claim arises out of [MetroPCS's] unauthorized use, negligent use, or misuse of any Product or Service." E9-1-1 Agreement § 7.4. While TCS does not have sufficient information at this time to suggest has MetroPCS has used TCS's services in an unauthorized or negligent manner, it reserves the right to make such argument at a later time.

*Phoenix* involved a dispute between Sony and Intervoice regarding whether the parties' professional services contract and license and purchase agreement required Intervoice to indemnify Sony in a patent infringement suit brought by Phoenix Solutions. Sony purchased from Edify, a subsidiary of Intervoice, software and professional services related to interactive voice recognition ("IVR") technology. *Phoenix*, 2009 WL 1604700 at *1. The IVR system was customized for Sony's use in its customer service call center, and Edify continued to provide software maintenance and support services. *Id.* In December 2006, Phoenix sued Sony, claiming that Sony's IVR system infringed Phoenix's patents for speech recognition processes. *Id.* at *2. Sony filed a third-party complaint against Intervoice, seeking indemnification and breach of warranty. *Id.* The court identified precedent stating that a provider of constituent parts cannot be forced to indemnify the possessor of the completed system, but stated that it was unable to determine the role of the services of Intervoice/Edify in the overall Sony IVR system. *Id.* at *14. The question turned on whether Sony or Edify had been in control of the customization of Edify's IVR software for use in Sony's system. *Id.* at *13. Here, by contrast, there is no dispute that MetroPCS utilizes TCS's hosted PDE services in conjunction with other wireless technologies in order to provide a cellular network capable of E9-1-1 functionality, and that TCS played no role in the creation of that network.

In *Chemtron*, third-party defendant Viking Injector Company manufactured detergent dispensers and disposable plastic caps, which it sold to third-party plaintiff Aqua Products as a component part of Aqua's installation of detergent dispensers and distribution of detergent-filled containers to restaurants and restaurant service corporations for use in dishwashers. *Chemtron*, 830 F. Supp. at 315. Aqua was then sued by Chemtron, which alleged that Aqua infringed on its patent of a device which included "a detergent dispenser, detergent container with a screen cap,

and a method for dispensing detergent into a dishwashing machine." *Id.* Aqua filed a third-party complaint against Viking, claiming contribution and indemnification under the UCC warranty against infringement. *Id.* The court dismissed the indemnification complaint, stating that the language of the UCC "should not be construed to mean that the buyer, after receiving a clean title to purchased goods, can subsequently incur a lien or liability on the purchased goods *by his own actions*, and then impose such liability on the seller." *Id.* (emphasis added). The court found that Viking had delivered non-infringing goods, and that Chemtron's infringement suit against Aqua was "based upon [Aqua's] infringing *apparatus*, which was assembled from non-infringing component parts, some of which were obtained from Viking." *Id.* at 316 (emphasis in original).

In *Motorola*, the plaintiff sued defendant Varo alleging infringement of a patent describing a process for marking germanium semiconductor devices. *Motorola*, 656 F. Supp. at 716. Varo, in turn, sued three third-party defendants, each of which had at one time supplied Varo with a photosensitive material called a "photoresist," for use in the semiconductor process. *Id.* Neither Varo, nor Motorola, alleged that the photoresist violated the patent in question. *Id.* at 718. Varo alleged instead that the sellers had induced it to use the photoresist in a process that violated the patent. *Id.* The court disagreed, stating that indemnification should not apply to "a buyer's use of the good" but only to the good itself. *Id.* To state otherwise would convert the concept into "a warranty as to conduct, not as to goods." *Id.* at 719.

The situation here is very similar to the cases cited. TCS provides MetroPCS with hosted PDE services that MetroPCS combined with other products and technologies to create the E9-1-1 system that is the basis of the Texas Litigation. As such, the Texas Litigation arises out of MetroPCS's cellular system, not TCS's prior art services. The indemnification provision of the

E9-1-1 Agreement cannot be stretched to require TCS to indemnify MetroPCS for MetroPCS's own subsequent actions or conduct. *See Chemtron*, 830 F. Supp. at 315; *Motorola*, 656 F. Supp. at 719. TCS did not sign on to be MetroPCS's insurer of last resort; rather, TCS agreed to indemnify MetroPCS for claims arising out of infringement caused by **TCS's** products or services. There is no allegation in the Texas Complaint that TCS's hosted PDE services infringe the patents referenced therein.[6] Accordingly, the Texas Litigation is not an "IP Claim" and TCS is under no obligation to defend or indemnify MetroPCS. MetroPCS's Demand should be dismissed.

## C.   Plaintiff's Claims Are Premature

The Demand also should be dismissed for the independent reason that its claims are premature. An indemnification claim accrues when the underlying suit has been "resolved with certainty." *Scharf v. Edgcomb*, 864 A.2d 909, 919 (Del. 2004) (such a claim is appropriate only when "the underlying investigation or litigation is definitely resolved"). Put another way, "while the underlying action is pending, the issue of whether [the indemnitor] had a duty to indemnify [the indemnitee] for any eventual losses [the indemnitee] might suffer in the [underlying] litigation is not yet ripe." *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 197 (Del. 2009). This general rule also applies to claims seeking declaratory judgment regarding indemnification duties. *Id.* Thus, until MetroPCS makes payment or is found liable to the Texas Plaintiffs, the claim for indemnification is premature.

---

[6] Indeed, the title of the patents in the Texas Litigation is "Cellular Telephone System That Uses Position of a Mobile Unit to Make Call Management Decisions." Texas Compl. ¶ 11. The patents clearly relate to a "Cellular Telephone System" rather than TCS's PDE services.

## D.   Dual Proceedings Could Lead to Double Recovery for MetroPCS

If MetroPCS is allowed to proceed in both this Arbitration and the Maryland Litigation, MetroPCS would receive two bites at the same apple, and could conceivably reach an outcome where MetroPCS is compensated twice for the same claim. This Arbitration and the Maryland Litigation have the same purpose – to determine the existence of any indemnification duties owed to MetroPCS by TCS concerning the subject matter of the Texas Litigation. The Texas Plaintiffs do not differentiate between MetroPCS's E9-1-1 and commercial location-based services, but rather allege that both systems violate their patents. *See* Texas Compl. ¶¶ 13–16. It is MetroPCS that has bifurcated this issue into twin proceedings.

If, hypothetically, MetroPCS is successful in both proceedings, it is completely unknown how any sort of relief would or could be apportioned between the two proceedings. For example, each tribunal could independently award damages to MetroPCS, and such damages, when aggregated, could amount to more than MetroPCS is ultimately responsible for in the Texas Litigation. Further, if the two tribunals reach opposite results, the possible outcomes are simply bizarre – TCS, for example, could be required to defend MetroPCS in the Texas Litigation against allegations arising out of one Agreement but not the other. Any damages would likewise be impossible to apportion, because the Texas Litigation does not specify which damages it alleges to arise from MetroPCS's E9-1-1 system or from its commercial location-based services. *See* Texas Compl., Prayer at (b)–(c).

MetroPCS is attempting to have two bites at the same apple, and the result is a waste of resources for all parties and the potential of inconsistent results and double recovery for MetroPCS. Accordingly, the Demand should be dismissed.

## II.    IN THE ALTERNATIVE, THIS ACTION SHOULD BE STAYED PENDING RESOLUTION OR CONSOLIDATION OF THE MARYLAND LITIGATION

### A.    The Maryland Litigation May Be Consolidated With This Arbitration

As stated previously, MetroPCS filed suit against TCS in the United States District Court for the District of Maryland on the same day it filed the Demand, seeking indemnification under the NS Agreement regarding the Texas Litigation. *See generally* Compl. On May 26, 2009, TCS filed a Motion to Dismiss or, in the Alternative, to Compel Arbitration, or, in the Alternative, to Stay. That Motion is currently before Judge Quarles, who has not indicated when he will rule.

One of the possible outcomes of that Motion would be for the court to dismiss the Maryland Litigation and compel that the Maryland Litigation be consolidated with this Arbitration. Given the great similarity between the two proceedings – both seek to compel TCS to indemnify MetroPCS for potential liability related to the Texas Litigation, and the two Agreements in question are identical in all material respects – combining the two proceedings into a single arbitration would serve goals of efficiency and uniformity. If, indeed, the two proceedings are consolidated, it would be a waste of the Panel's time to move forward with this Arbitration before such consolidation occurs.

### B.    Parallel Proceedings Could Lead to Inefficiencies and Inconsistent Results

Even if the court ultimately decides not to consolidate the Maryland Litigation with this Arbitration, the Arbitration should nonetheless be stayed pending resolution of the Maryland Litigation. To allow this Arbitration to proceed while the Maryland Litigation is pending would result in a waste of resources and the possibility of inconsistent or anomalous results.

As discussed, the gravamen of MetroPCS's Complaint and MetroPCS's Demand for Arbitration is the same. *Compare* Compl. ¶¶ 5, 6, *with* Demand ¶¶ 6, 7. MetroPCS asserts the

exact same causes of action and requests the same relief. *Compare* Compl. Part V.A–C, *with* Demand Part V.A–C. The indemnification provisions in the Agreements are the same in all relevant respects. *Compare* NS Agreement § 7.4, *with* E9-1-1 Agreement § 7.4. The central question to be answered in the two proceedings is the same. To permit this Arbitration and the Maryland Litigation to proceed simultaneously in order to decide the same question between the same parties and to disallow the same relief would be inefficient and would waste valuable resources of both this Panel and the parties. *See United States ex rel MPA Const. Co. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 941 (D. Md. 2004) ("It seems grossly inefficient to have the parties arbitrate and litigate at the same time or bear unnecessary expense....") (quoting *U.S. ex rel Ranner v. Daco Constr. Inc.*, 38 F. Supp. 2d 1299, 1304–05 (N.D. Okla. 1999)).

As stated previously, permitting the proceedings to move forward in parallel also risks inconsistent or anomalous results. In each case, it must be determined whether the allegations of the Texas Litigation are within the scope of the indemnification provisions of the Agreements. And, although TCS maintains that its duty pursuant to the indemnification provisions of the Agreements properly may be determined in a motion to dismiss, if TCS is not successful in its argument, then both proceedings will require extensive discovery into the services TCS provides MetroPCS, MetroPCS's use of those services, and whether the allegedly infringing activity results from that use. These common questions of fact, and the risk that they will be decided inconsistently, counsel in favor of staying this Arbitration pending resolution of the Maryland Litigation.

TCS maintains that the risk of inconsistent results and potential double recovery for MetroPCS is grounds for dismissal. *See supra* Section I.D. If, however, this Panel believes that dismissal would be inappropriate, TCS argues that the specter of inconsistent results, waste of

resources, and potential double recovery counsel in favor of staying this Arbitration at least through the conclusion of the Maryland Litigation, if not through the conclusion of the Texas Litigation. At the conclusion of those proceedings, this Panel will be in a better position to determine TCS's responsibilities or lack thereof under the E9-1-1 Agreement. Staying this Arbitration would conserve the resources of the parties and the Panel, and would remove the risk of inconsistent and anomalous results.

## CONCLUSION

For all the foregoing reasons, TCS respectfully requests that its Motion be granted and that MetroPCS's Demand be dismissed in its entirety for failure to state a claim or, in the alternative, stayed pending resolution or consolidation of the Maryland Litigation.

Respectfully submitted,

/s/

Hugh J. Marbury
Benjamin D. Schuman
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209-3600
(410) 580-3000

Erica J. Pascal
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, California 92101-4297
(619) 699-2700

*Attorneys for TeleCommunication Systems, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## NORTHERN DIVISION

METROPCS WIRELESS, INC.    )
2250 Lakeside Boulevard    )
Richardson, Texas 75082,    )
    )
    Plaintiff,    )
    )    Civil Action No. _____
v.    )
    )
TELECOMMUNICATION SYSTEMS,    )
INC.    )
275 West Street, Suite 400
Annapolis, Maryland 21401
Anne Arundel County,

    Defendant.

### ORIGINAL COMPLAINT

Plaintiff MetroPCS Wireless, Inc. ("*MetroPCS*" or "*Plaintiff*") files this Original Complaint against Defendant TeleCommunication Systems, Inc. ("*TCS*" or "*Defendant*") and, in support thereof, respectfully alleges as follows:

### I.
### PARTIES

1.    MetroPCS Wireless, Inc. is a Delaware corporation with its principal place of business at 2250 Lakeside Boulevard, Richardson, Texas 75082.

2.    TeleCommunication Systems, Inc. is a Maryland corporation with its principal place of business at 275 West Street, Suite 400, Annapolis, Maryland 21401. TCS may be served with process by serving its registered agent, CSC – Lawyers Incorporating Service Company, 7 St. Paul Street, Suite 1660, Baltimore, Maryland 21202.

1

## II.
### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. Venue lies in this jurisdiction pursuant to an agreement between parties as evidenced by the terms of the Network Services Agreement, dated November 12, 2007 ("*Agreement*"), which forms the basis of this action.[1] Venue is also proper in this jurisdiction pursuant to 28 U.S.C. § 1391(a) because Defendant's principal place of business is located in this District.

## III.
### SUMMARY OF DISPUTE

5. MetroPCS' claims arise out of TCS' failure to defend, indemnify and hold harmless MetroPCS from Civil Action No. 2:08cv381, styled *EMSAT Advanced Geo-Location Technology, LLC et al. v. MetroPCS Communications, Inc. and MetroPCS Wireless, Inc. et al.*, which is currently pending in the United States District Court for the Eastern District of Texas— Marshall Division (the "*Federal Court Action*").[2] In November 2007, MetroPCS contracted with TCS for the use of its location-based service ("*LBS*") technology and services. Under the parties' agreement, MetroPCS assumed no liability for intellectual property claims ("IP Claims") resulting from its use of TCS' LBS technology and services, and TCS agreed to defend,

---

[1] A true and correct copy of the Agreement is attached hereto as Exhibit A.

[2] A true and correct copy of the complaint filed in the Federal Court Action ("*Complaint*") is attached hereto as Exhibit B.

2

indemnify and hold harmless MetroPCS from such claims. *See* Section 7.4 (IP Claims) of the Agreement.

6. MetroPCS was sued in the Federal Court Action by EMSAT Advanced Geo-Location Technology, LLC ("*EMSAT*") and Location Based Services, LLC (collectively, the "*Federal Plaintiffs*") on October 7, 2008. The Federal Plaintiffs' core allegation in the Federal Court Action is that MetroPCS infringes Federal Plaintiffs' patents through MetroPCS' use of LBS service and technology provided by TCS - - the exact TCS technology and services that MetroPCS contracted with TCS to use under the Agreement, and the exact IP Claims for which TCS agreed to defend, indemnify and hold harmless MetroPCS. Upon receipt, MetroPCS promptly notified TCS of the Federal Court Action and the allegations contained therein and demanded that pursuant to Section 7.4 (IP Claims) of the Agreement TCS defend, indemnify and hold harmless MetroPCS from the Federal Court Action. TCS has refused to fulfill its obligations under the Agreement. MetroPCS now files this suit seeking a declaratory judgment that TCS under the Agreement has an obligation to defend, indemnify and hold harmless MetroPCS against the Federal Court Action, specific performance by TCS of these obligations, damages for TCS' breach of the Agreement, and payment of any royalties or damages arising out of the Federal Court Action.

## IV.
## STATEMENT OF FACTS

### *A. Location-Based Services*

7. LBS is a new and innovative information and entertainment service commonly offered by wireless providers to their customers. LBS allows mobile users to know their specific

3

location and to provide them with personalized applications and services tailored to their current location.

8. LBS technology utilizes the geographic positioning of a mobile device to identify the location of the user and, based on this information, provides access to a multitude of information regarding persons and objects in that area. For example, with increasing popularity LBS technology is used by wireless customers to locate food, lodging and entertainment in the area, access information about current traffic conditions and alternate routing, and locate friends and family.

## *B.  The Relationship Between MetroPCS and TCS*

9. MetroPCS is a wireless provider. As of December 31, 2008, MetroPCS has approximately 5.4 million customers in major metropolitan areas across the United States. Among the many services MetroPCS offers to its network customers is applications which use LBS. MetroPCS contracted with TCS to provide the necessary technology and TCS equipment to allow MetroPCS to provide LBS service to its customers.

10. On November 12, 2007, MetroPCS and TCS entered into the Agreement. Section 1 (Relationship of the Parties) of the Agreement defines the relationship between MetroPCS and TCS. Section 1.1 (Appointment) states: "[MetroPCS] will make use of and deploy TCS technical solutions and services ("the TCS Hosted Xypoint® Location Based Service" or "Hosted XLS Service") throughout its markets." Section 7.4 (IP Claims) of the Agreement provides that TCS will:

> **IP Claims.** Subject to [MetroPCS'] compliance with the terms of this Section 7.4 and Sections 7.5 and 7.6, TCS *shall defend, indemnify and hold harmless* [MetroPCS] and its officers and directors (each, an **"Indemnified Party"** and, collectively, the

4

> **"Indemnified Parties"**) from and against any loss, damage, or liability, including reasonable costs and attorney fees, *to the extent that such loss, damage or liability arises out of any third-party claim, suit, or allegation that [MetroPCS'] use of any product or service provided by TCS under this Agreement or any claim under Sections 7.2 or 7.3 infringes the patent*, trademark, copyright rights, trade secret rights of [sic] other proprietary rights of such third party (collectively the **"IP Claim"**). . . . (Emphasis added).[3]

MetroPCS uses TCS' technology and services to provide LBS to its customers.

## C.  *The Federal Court Action*

11.      On October 7, 2008, Federal Plaintiffs filed the Federal Court Action against MetroPCS. In the Federal Court Action, Federal Plaintiffs allege that EMSAT is the assignee and owner of all rights, title and interest in, and Location Based Services, LLC is the exclusive licensee of the following patents: U.S. Patent No. 5,946,611 ("*'611 Patent*") issued for "Cellular Telephone System That Uses Position of a Mobile Unit to Make Call Management Decisions"; U.S. Patent No. 6,847,822 ("*'822 Patent*") issued for "Cellular Telephone System That Uses Position of a Mobile Unit to Make Call Management Decisions"; U.S. Patent No. 7,289,763 ("*'763 Patent*") issued for "Cellular Telephone System That Uses Position of a Mobile Unit to Make Call Management Decisions"; and U.S. Patent Application Pub. No. US 2008/0014965 A1 ("the '965 Publication") entitled "Cellular Telephone System That Uses Position of a Mobile Unit to Make Call Management Decisions" (collectively the "*Patents*").[4]

12.      Federal Plaintiffs' core allegation in the Federal Court Action is that MetroPCS' "offer for sale, sale, use, and/or inducement of the use, offer for sale, and sale" of mobile E911

---

[3] Agreement, Section 7.4 (IP Claims) at p. 5.

[4] Complaint at pp. 4, 7-8.

5

services and commercial location based services infringes Federal Plaintiffs' patent rights.[5] More simply stated, Federal Plaintiffs' Federal Court Action is a third-party suit alleging that MetroPCS' use of the LBS technology and services provided to MetroPCS by TCS under the Agreement infringes the Patents. Although MetroPCS denies that it infringes Federal Plaintiffs' Patents, nonetheless MetroPCS is required to defend against the Federal Court Action.

## D. TCS' Duty to Defend, Indemnify and Hold Harmless MetroPCS Under the Agreement

13.    Fundamental to the Agreement is MetroPCS' use of TCS' LBS service and technology. Without the LBS provided by TCS, MetroPCS would need to contract with a third party for such LBS technology or buy and license such technology from third parties and install and operate it itself. Since MetroPCS procures its LBS service and technology from TCS, MetroPCS relies on TCS to ensure that TCS' service and technology is free from IP Claims and that MetroPCS' use of such services and technology comports with federal, state and local laws. MetroPCS expressly disclaimed any assumption of such liability for IP Claims in entering into the Agreement and bargained for an indemnity and defense agreement from TCS related to TCS' LBS service and technology. Section 7.4 (IP Claims) of the Agreement provides as follows:

> **IP Claims.** Subject to [MetroPCS'] compliance with the terms of this Section 7.4 and Sections 7.5 and 7.6, TCS **shall defend, indemnify and hold harmless** [MetroPCS] and its officers and directors (each, an **"Indemnified Party"** and, collectively, the **"Indemnified Parties"**) from and against any loss, damage, or liability, including reasonable costs and attorney fees, **to the extent that such loss, damage or liability arises out of any third-party claim, suit, or allegation that [MetroPCS'] use of any product or service provided by TCS under this Agreement or any claim under Sections 7.2 or 7.3 infringes the patent,** trademark, copyright rights, trade secret rights of [sic] other proprietary rights

---

[5] *Id.* at pp. 6-8.

of such third party (collectively the **"IP Claim"**). . . . (Emphasis added).[6]

14.     Federal Plaintiffs' Federal Court Action is an "IP Claim" as defined under Section 7.4 (IP Claims) of the Agreement. Federal Plaintiffs' patent infringement allegations arise out of MetroPCS' "use" of TCS' LBS technology and services—the precise matters MetroPCS contracted for under the Agreement.

15.     On October 21, 2008, MetroPCS sent TCS a notice informing TCS of the Federal Court Action, Federal Plaintiffs' allegations that the LBS service offered by MetroPCS infringes the Patents, and demanding that TCS defend, indemnify and hold harmless MetroPCS in accordance with the Agreement.[7] In doing so, MetroPCS fully complied with its obligation under Section 7.5 (Indemnity Procedure) of the Agreement to provide TCS with "prompt written notice of any IP Claim or other claim under Sections 7.2 or 7.3 for which it seeks indemnification hereunder."[8]

16.     On November 5, 2008, TCS responded to MetroPCS acknowledging the allegations made in the Federal Court Action, but disclaiming any obligation to defend, indemnify and hold harmless MetroPCS.[9]

17.     Consequently, TCS has failed to meet its contractual obligations under the Agreement, and MetroPCS now files this suit requesting a declaratory judgment that TCS has an obligation to defend, indemnify and hold harmless MetroPCS in the Federal Court Action, an order that TCS specifically perform that obligation, compensation for any damages caused by

---

[6] Agreement, Section 7.4 (IP Claims) at p. 5.
[7] October 21, 2008 letter from J. Christopher Luna, Staff Vice President and Assistant General Counsel for MetroPCS, to Mark D. Johnson at TCS, a true and correct copy of which is attached hereto as Exhibit C.
[8] Agreement, Section 7.5 (Indemnity Procedure) at p. 5.
[9] November 5, 2008 letter from Bruce A. White, representative of TCS, to J. Christopher Luna, a true and correct copy of which is attached hereto as Exhibit D.

7

TCS' breach of the Agreement, and payment of any royalties or damages arising out of the Federal Court Action. If TCS fails to comply with its obligations, MetroPCS will be harmed because MetroPCS will be required to retain counsel, spend money to defend against the Federal Court Action, and divert important management attention and other resources to the Federal Court Action, for which money damages would not be sufficient.

## V.
## CAUSES OF ACTION

### A. *Declaratory Judgment for TCS' Duty to Defend, Indemnify and Hold Harmless MetroPCS from the Federal Court Action*

18.     MetroPCS re-alleges and incorporates paragraphs 1 through 17 above as if fully set forth herein in support of its declaratory judgment cause of action.

19.     Under the Agreement, MetroPCS contracted with TCS for the use of TCS' LBS service and technology. Under Section 7.4 (IP Claims) of the Agreement, TCS expressly agreed to defend, indemnify and hold harmless MetroPCS from any third-party claims, allegations, and suits for patent infringement arising out of MetroPCS' use of TCS' LBS service and technology, which would include Federal Plaintiffs' allegations that TCS' LBS service and technology infringes the Patents.

20.     Federal Plaintiffs filed the Federal Court Action alleging MetroPCS infringes the Patents by its use of TCS' LBS service and technology. MetroPCS promptly notified TCS of the Federal Court Action, the Federal Plaintiffs' allegations, and demanded that TCS defend, indemnify and hold harmless MetroPCS from the claims, allegation and damages alleged in the Federal Court Action. Therefore, MetroPCS has fulfilled its obligations under the Agreement

8

and a declaratory judgment that TCS has an obligation to defend, indemnify and hold harmless MetroPCS from the Federal Court Action should be entered.

*B.*   *Specific Performance of TCS' Obligation to Defend, Indemnify and Hold Harmless MetroPCS from the Federal Court Action*

21.   MetroPCS re-alleges and incorporates paragraphs 1 through 20 above as if fully set forth herein in support of its specific performance cause of action.

22.   Under the Agreement, MetroPCS contracted with TCS for the use of TCS' LBS service and technology. Under Section 7.4 (IP Claims) of the Agreement TCS expressly agreed to defend, indemnify and hold harmless MetroPCS from any third-party claims, allegations or suits for patent infringement arising out of MetroPCS' use of TCS' LBS service and technology, which would include Federal Plaintiffs' allegations that TCS' LBS service and technology infringes the Patents.

23.   Federal Plaintiffs filed the Federal Court Action alleging MetroPCS infringes the Patents by its use of the TCS' LBS service and technology. MetroPCS promptly notified TCS of the Federal Court Action and demanded that TCS defend, indemnify and hold harmless MetroPCS from the Federal Court Action. Therefore, MetroPCS has fulfilled its obligations under the Agreement and TCS should be ordered to defend, indemnify and hold harmless MetroPCS from the Federal Court Action.

*C.*   *Breach of the Agreement by TCS*

24.   MetroPCS re-alleges and incorporates paragraphs 1 through 23 above as if fully set forth herein in support of its breach of contract cause of action.

9

25. TCS is in breach of the Agreement. Despite demand, TCS has failed and refused to defend, indemnify, hold harmless and otherwise dispose of the IP Claims made the subject of the Federal Court Action.

26. MetroPCS has fulfilled all obligations under the Agreement. TCS remains in breach, however, and should be found in breach of the Agreement. Consequently, MetroPCS requests an award of all damages, attorneys' fees and costs flowing, directly or indirectly, from the breach of the Agreement by TCS.

## D. *Common-Law Indemnification*

27. MetroPCS re-alleges and incorporates paragraphs 1 through 26 above as if fully set forth herein in support of its common-law indemnification cause of action.

28. The Federal Plaintiffs sued MetroPCS for patent infringement allegedly resulting from MetroPCS' use and sale of LBS technology and services. The sole means by which MetroPCS provides LBS services to its customers is through the use of TCS' LBS technology and services purchased under the Agreement. MetroPCS relies solely on TCS to provide TCS' LBS technology and services free from patent infringement claims.

29. Should MetroPCS be found liable to the Federal Plaintiffs for patent infringement in the Federal Court Action, MetroPCS alone would be required to extinguish such legal obligation to the Federal Plaintiffs. However, TCS and MetroPCS owe a common duty to the Federal Plaintiffs not to infringe the Patents. Therefore, as the primarily responsible infringer and sole provider of the LBS technology and services to MetroPCS, TCS should be ordered to wholly indemnify MetroPCS from and against the Federal Court Action.

*E.    In the Alternative, Common-Law Contribution*

30.    MetroPCS re-alleges and incorporates paragraphs 1 through 29 above as if fully set forth herein in support of its common-law contribution cause of action.

31.    The Federal Plaintiffs sued MetroPCS for patent infringement allegedly resulting from MetroPCS' use and sale of LBS technology and services. The sole means by which MetroPCS provides LBS services to its customers is through the use of TCS' LBS technology and services purchased under the Agreement. MetroPCS relies solely on TCS to provide TCS' LBS technology and services free from patent infringement claims.

32.    Should MetroPCS be found liable to the Federal Plaintiffs for patent infringement in the Federal Court Action, MetroPCS alone would be required to extinguish such legal obligation to the Federal Plaintiffs. However, TCS and MetroPCS owe a common duty to the Federal Plaintiffs not to infringe the Patents. Therefore, as the primarily responsible infringer and sole provider of the LBS technology and services to MetroPCS, TCS should be ordered to provide contribution to MetroPCS in relative proportion to TCS' responsibility for the infringement of the Patents, if any.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, MetroPCS respectfully requests the following relief:

> (i)     A declaratory judgment that TCS has an obligation to defend, indemnify and hold harmless MetroPCS from and against the Federal Court Action;
>
> (ii)    TCS be ordered to specifically perform its obligations under the Agreement, including its obligations under Section 7.4 (IP Claims);
>
> (iii)   TCS be ordered to defend MetroPCS from and against the Federal Court Action;

11

(iv)   TCS be ordered to pay reasonable costs and attorneys' fees incurred by MetroPCS in its defense of the Federal Court Action;

(v)    TCS be ordered to indemnify and hold harmless MetroPCS from all loss, damage, or liability resulting from the Federal Court Action, if any;

(vi)   TCS be found in breach of the Agreement and an award of all damages, attorneys' fees and costs flowing, directly or indirectly, from the breach of the Agreement by TCS;

(vii)  TCS be ordered to pay any and all amounts, including any royalties and damages resulting from, arising out of, or in connection with the Federal Court Action, if any; and

(viii) In the alternative, TCS be ordered to provide contribution to MetroPCS in relative proportion to its responsibility for any and all amounts, including royalties and damages, resulting from, arising out of, or in connection with the Federal Court Action, if any; and

(iv)   MetroPCS be awarded all other and further relief to which it may be justly entitled.

Respectfully submitted,

**FULBRIGHT & JAWORSKI L.L.P.**

/s/

Matthew H. Kirtland
Md. State Bar No. 26089
801 Pennsylvania Avenue, N.W.
Washington, DC 20004-2623
Telephone: 202.662.0200
Facsimile: 202.662.4643

Brett C. Govett
Shea R. Haass
2200 Ross Avenue, Suite 2800
Dallas, Texas 75201
Telephone: 214.855.8000
Facsimile: 214.855.8200

ATTORNEYS FOR PLAINTIFF,
METROPCS WIRELESS, INC.

12

## E9-1-1 NETWORK SERVICES AGREEMENT

This Agreement, dated as of April 11, 2003, is made by and between TeleCommunication Systems Inc, a Maryland corporation ("TCS"), having a principal place of business at 275 West Street, Annapolis, Maryland 21401 and MetroPCS Georgia, Inc. or MetroPCS California/Florida, Inc., Delaware corporations ("CUSTOMER") both having a principal place of business at 8144 Walnut Hill Lane, Suite 800, Dallas, TX 75231. The parties agree as follows:

### Section 1.    Relationship of the Parties

1.1    **Appointment.** CUSTOMER hereby appoints TCS, and TCS hereby accepts appointment, as CUSTOMER's agent solely for purposes of this Agreement. CUSTOMER will make use of and deploy TCS technical solutions to provide wireless enhanced 9-1-1 services ("the TCS E9-1-1 Services") throughout its present markets. However, CUSTOMER retains the option to deploy other solutions, if required in order to satisfy federal, state or local regulations for E9-1-1 services. Except as expressly authorized in this Agreement, TCS will not enter into any agreements or undertakings for or on behalf of CUSTOMER without CUSTOMER's prior written consent.

*see amendment #2* (handwritten)

1.2    **Designated Representatives.** Promptly after the execution of this Agreement, each party will designate in writing an individual to represent such party in the administration of the Services and this Agreement. Further, CUSTOMER will designate, and have in place at all times during the Term, a separate individual to represent CUSTOMER in connection with the performance of the Services in each market. Either party may change its designated representatives from time to time by giving written notice of such change to the other party.

### Section 2.    The Services

2.1    **Scope and Performance.** TCS will use reasonable efforts to perform for CUSTOMER the TCS E9-1-1 Services, as set forth in Phases I and II Service Descriptions, [attached hereto as Exhibit B and the Hosted PDE Services Supplement and made a part of this Agreement,] for each public safety answering point ("PSAP"), requesting from the CUSTOMER such services on such activation date (the "PSAP Activation Date"). This Network Services Agreement includes the services as described above and covers deployment of a Phase I and Phase II solution and the ongoing provisioning of intelligent routing, data delivery to the PSAP and related operational support required to deliver FCC-compliant Phase I and Phase II service. In order to enable Phase II service, CUSTOMER must select a Position Determination Equipment vendor ("PDE"), if other than TCS. The scope of effort and the associated costs of the integration of such PDE into TCS' E9-1-1 services solution will be covered in a separate Exhibit. TCS will not be responsible for implementation delays or service degradations that are not within its control including, without limitation, implementation delays or service degradations caused by CUSTOMER (including a failure by CUSTOMER to notify TCS of a Valid PSAP Request) or any PSAP, Local Exchange Carrier ("LEC"), SS7 signaling provider, PDE (if other than TCS) or interconnecting communications carrier; provided that any PSAP Activation Date that is affected by such an implementation delay shall be extended to take such delay into account.

2.2    **Addition or Deletions of Markets or PSAPs.** As specified in Paragraph 1.1 above the parties may from time to time by mutual agreement add/or delete Markets and PSAPs subject to this Agreement.

2.3    **Cooperation and Assistance.** CUSTOMER will cooperate with TCS by providing such information and will furnish to TCS all information (e.g. subscriber counts) and assistance expressly required to be provided by CUSTOMER in the Services Description. Without limitation of the foregoing, CUSTOMER will provide TCS with access to technical personnel and information in connection with performance of the Services and will furnish all information and assistance required to be provided by CUSTOMER under the Services Plan. Further, TCS and CUSTOMER will cooperate with each other in conducting any field tests and trials that TCS reasonably determines are necessary or desirable to ensure the performance and reliability of the TCS E9-1-1 Services. CUSTOMER will promptly notify TCS of any defect, deficiency or error known to or discovered by CUSTOMER.

2.4    **Network Equipment and Software.** Title to communications equipment installed by TCS on the premises of any PSAP in connection with the performance of the Services, including without limitation the Frame