IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| | * |
| METROPCS WIRELESS, INC. | |
| | * |
| Plaintiff, | |
| | * |
| v. | CIVIL NO.: WDQ-09-0601 |
| | * |
| TELECOMMUNICATIONS SYSTEMS, INC., | |
| | * |
| Defendant. | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

MetroPCS Wireless, Inc. ("MetroPCS") sued TeleCommunications Systems, Inc. ("TCS") for a declaratory judgment that TCS has a duty to defend and indemnify MetroPCS in a suit pending in the Eastern District of Texas, and other relief. Pending is TCS's motion to dismiss, to compel arbitration, or to stay the case pending arbitration. Also pending is MetroPCS's motion to take judicial notice of TCS's "contradictory litigation and arbitration filings." For the following reasons, TCS's motion will be granted in part and denied in part. MetroPCS's motion will be denied.[1]

_____

[1] MetroPCS also moved for leave to file a reply in support of its motion to take judicial notice. Under Local Rule 105, no leave is required. *See* D. Md. R. 105. The motion will be granted.

1

I.   Background

MetroPCS is a wireless telecommunications provider based in Richardson, Texas.  Compl. ¶¶ 1, 5.  Under a November 12, 2007 Network Services Agreement ("the NS Agreement"), TCS agreed to provide technology and equipment to enable MetroPCS to offer "location based services" ("LBS") to its wireless customers.[2]  *Id.* ¶ 10; Ex. 1, § 1.1 [hereinafter "NS Agreement"].  Under § 7.4 of the NS Agreement:

> TCS shall defend, indemnify and hold harmless [MetroPCS] and its officers and directors . . . from and against any loss, damage, or liability, including reasonable costs and attorney's fees, to the extent that such loss, damage or liability arises out of any third-party claim, suit, or allegation that [MetroPCS's] use of any product or service provided by TCS under this Agreement . . . infringes the patent, trademark, copyright rights, trade secret rights o[r] other proprietary rights of such third party (collectively, the "IP Claim"). TCS shall be entitled to solely control the defense of any such IP Claim with attorneys of its choice, and shall solely control the disposition of any such IP Claim provided such disposition admits no wrong-doing on the part of [MetroPCS].

---

[2] Under § 1.1 of the NS Agreement: "[MetroPCS] will make use of and deploy TCS technical solutions and services ("the TCS Hosted Xypoint® Location Based Service" or "Hosted XLS Service") throughout its markets."  Compl. ¶ 10; Ex. 1, § 1.1.

"Commercial" LBS technology is provided under the NS Agreement. It uses the location of a mobile device (*e.g.*, a cellular telephone) to provide information about persons and objects in the area.  For example, LBS enables wireless customers to locate nearby restaurants, lodging and entertainment. *See* Compl. ¶ 7, 8, 12.

*Id.* ¶ 10; NS Agreement § 7.4.

On October 7, 2008, Emsat Advanced Geo-Location Technology, LLC and Location Based Services, LLC ("the Texas plaintiffs") sued MetroPCS in the United States District Court for the Eastern District of Texas ("the Texas suit"), alleging that MetroPCS's sale and use of LBS infringe their patent rights. *Id.* ¶¶ 11, 12; Ex. B. On October 21, 2008, MetroPCS notified TCS of the Texas suit and demanded that TCS defend, indemnify and hold it harmless in accordance with § 7.4 of the NS Agreement. *Id.* ¶ 15; Ex. C.  On November 5, 2008, TCS disclaimed any obligation arising from the Texas suit. *Id.* ¶ 16; Ex. D.

On March 10, 2009, MetroPCS filed this suit seeking a declaratory judgment that TCS is obligated to defend and indemnify it in the Texas suit; specific performance of that obligation; compensation for TCS's alleged breach of contract; and payment of royalties or damages from the Texas suit. Paper No. 1.  On May 26, 2009, TCS moved to dismiss, compel arbitration, or stay the case pending the outcome of a related arbitration involving the parties. Paper No. 16.   On September 1, 2009, MetroPCS filed a motion asking the Court to take judicial notice of "TCS's Contradictory Litigation and Arbitration Filings."  Paper No. 19.

II.   Analysis

    A. TCS's Motion to Dismiss under Rule 12(b)(6)

      1. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted.   Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts as pleaded must "allow[] the court to draw the reasonable inference that the defendant is liable

4

for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (*quoting Twombly*, 550 U.S. at 557).   The complaint must not only allege but also "show" the plaintiff is entitled to relief. *Id.* at 1950.   When the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief.   *Id.*

The Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions], unwarranted deductions of fact, or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

   2. § 7.4 of the NS Agreement and the Texas Suit

TCS contends that the complaint should be dismissed because the claims in the Texas suit are not covered by the NS Agreement; thus, TCS has no duty to defend or indemnify MetroPCS.

The Texas plaintiffs allege that MetroPCS and others "make, have made, use, sell, and/or offer for sale . . . location-based services and systems for cellular telephones" that infringe their patents.   Compl. ¶ 12; Ex. B, ¶ 16.   MetroPCS alleges that this

5

claim implicates the LBS technology and equipment that TCS provides under the NS Agreement.  Compl. ¶¶ 6,12.  Because § 7.4 of the NS Agreement requires TCS to "defend, indemnify, and hold harmless" MetroPCS from "any third-party claim, suit or allegation" that MetroPCS's "use of any product or service provided by TCS under [the NS Agreement]" infringes the patent of a third party, MetroPCS contends that TCS must defend and indemnify it in the Texas suit. NS Agreement § 7.4.

TCS responds that although the NS Agreement and the Texas suit concern LBS, the complaint should be dismissed because the Texas suit (1) does not mention TCS by name or otherwise attempt to link the allegedly infringing technology to TCS and (2) does not involve the particular LBS technology and equipment that TCS provides under the NS Agreement.

That TCS is not named in the Texas suit does not mean the suit is outside § 7.4 of the NS Agreement.  The Texas plaintiffs allege infringement based on MetroPCS's "*use . . . [of] location based services and systems* for cellular telephones." Compl. ¶ 12, Ex. B., ¶ 16. (emphasis added).  MetroPCS alleges that its "LBS service and technology" are provided by TCS, Compl. ¶ 9, 13, and that its use of TCS products is the basis of the Texas suit, *id*. ¶ 6, 12.  The NS Agreement requires TCS to defend and indemnify MetroPCS against any claim involving MetroPCS's "*use* of any product or service

provided by TCS under [the NS Agreement]."  NS Agreement § 7.4.
(emphasis added).  The NS Agreement does not condition TCS's duty
to defend and indemnify on TCS being named in a suit.  Thus,
MetroPCS has made a plausible showing that the Texas suit is within
§ 7.4.  Accordingly, TCS's motion to dismiss on this basis fails.

TCS also contends that § 7.4 does not apply because the Texas
suit does not involve products provided under the NS Agreement.
MetroPCS counters that its complaint alleged those products.  Pl.'s
Opp. 7-8; Compl. ¶¶ 6, 12.  It also argues that the Court's
contrary determination of this issue would be an inappropriate fact
finding in this 12(b)(6) motion.

Neither party has specified the products provided under the NS
Agreement or at issue in the Texas suit.  MetroPCS states simply
that TCS "provide[s] the necessary technology and . . . equipment
to allow MetroPCS to provide LBS to its customers," Compl. ¶¶ 9,
10, and that the Texas plaintiffs allege that "Metro PCS's use of
the LBS technology and services provided to MetroPCS by TCS under
the Agreement infringes [the plaintiffs' patents]," *id*. ¶¶ 6, 12.

TCS does not dispute that it provides LBS products to
MetroPCS, but it argues that its products are not the subject of
the Texas suit.  TCS has not attempted to distinguish its products
from those involved in the Texas suit; it merely states "the
products and services TCS provides under the NS Agreement simply

7

are not the products and services . . . that the Texas Plaintiffs allege infringe their patents."  Def.'s Reply 3-4.

Resolving this dispute would require a factual determination of what products TCS provides under the NS Agreement and what products are at issue in the Texas suit.  Such a determination is neither possible on this record nor appropriate at this stage of the case. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  Because the Court must accept MetroPCS's well-pled factual allegations as true, and because MetroPCS alleges that TCS products provided under the NS Agreement are involved in the Texas suit, dismissal on this basis would be inappropriate.

3. The Timing of MetroPCS's Claims

TCS argues that MetroPCS's complaint is premature, *i.e.*, MetroPCS's claim for indemnification would accrue only after MetroPCS has paid the Texas plaintiffs.[3]  TCS further argues that its duty to defend does not arise until its duty to indemnify has been established; thus, the duty-to-defend claim is also premature.

MetroPCS counters that New York law does not prohibit a declaratory judgment that a party has a duty to indemnify or defend before the liability of the indemnitee has been determined.

---

[3] The parties agree that New York law applies to MetroPCS's duty to defend and indemnification claims.  *See* NS Agreement § 9.10 ("This Agreement shall be construed and enforced in accordance with the Laws of the State of New York without regard to its conflicts of laws provisions.")

MetroPCS contends that a conditional judgment of indemnification may be entered before the Texas suit ends.  MetroPCS also argues that if its claim for indemnification is premature, the Court may enforce TCS's duty to defend because under the NS Agreement, that duty is not contingent upon the duty to indemnify.

It is a "general rule" under New York law that "a claim for indemnification does not accrue until payment has been made by the party seeking indemnification." *State v. Syracuse Rigging Co.*, 671 N.Y.S.2d 801, 802 (N.Y. App. Div. 1998)(*citing McDermott v. City of New York*, 406 N.E.2d 460, 461 (N.Y. 1980)).  However, "[d]eparture from this rule may be warranted whe[n] the interests of justice and judicial economy so dictate." *Syracuse Rigging*, 671 N.Y.S.2d at 802.  "In such an instance, the issuance of a conditional judgment of indemnification, pending the outcome of the main action is appropriate in order that the indemnitee obtain the earliest possible determination as to the extent to which he or she may expect to be reimbursed." *Id*. at 803. (internal citations omitted).

Here, it is undisputed that MetroPCS has not paid the Texas plaintiffs; thus, the question is whether MetroPCS's indemnification claim may proceed as a request for a conditional judgment?

As the parties acknowledge, conditional judgments of indemnification have generally been entered only in "third-party actions," *i.e.*, cases where the indemnitee brings its claim against the indemnitor as part of the underlying action.   Courts allow conditional judgments in these circumstances so that "all parties may establish their rights and liabilities in one action."  *Mars Assoc., Inc. v. New York City Educ. Constr. Fund*, 513 N.Y.S.2d 125, 133 (N.Y. App. Div. 1987).[4]  MetroPCS contends that conditional judgments may be entered in other than third-party actions, but proffers no case where this has been done and no reason why the Court should depart from the general rule.  MetroPCS's claims for (1) a declaratory judgment of TCS's duty to indemnify under the NS Agreement, (2) specific performance of that duty to indemnify, and (3) common-law indemnification are premature and will be dismissed.

Similarly, MetroPCS's contribution claim is also premature and must be dismissed.  *See Bay Ridge Air Rights, Inc. v. State of New York*, 375 N.E.2d 29, 32 (N.Y. 1978).

TCS argues that MetroPCS's duty-to-defend claim is also premature.  TCS cites authority that before a duty to indemnify has

---

[4] *See also* 82 N.Y. Jur. 2d, Third-Party Practice, § 160 ("Although a claim for indemnification or contribution technically does not arise until the prime obligation to pay has been established . . . third-party actions [may] be commenced before they are technically ripe, so that all parties may establish their rights and liabilities in one action.")

been established, the declaration of a duty to defend is
"inappropriate." *See, e.g.*, *Cannavale v. County of Westchester*,
551 N.Y.S.2d 948, 949 (N.Y. App. Div. 1990). These cases rely on
the principle that the "duty to defend is no broader than [the]
duty to indemnify." *Id.*[5]

MetroPCS counters that a duty-to-defend provision may be
enforced independently of the duty to indemnify when the contract
makes clear that a separate right to enforcement was intended.

The principle that the duty to defend is no broader than the
duty to indemnify "has no significance" when the "clear and
unambiguous terms" of the relevant contract establish that the duty
to defend is not contingent upon determination of the duty to
indemnify. *See McCleary v. City of Glen Falls*, 919 N.Y.S.2d 607,
609 (N.Y. App. Div. 2006).

Under § 7.4 of the NS Agreement, TCS must defend MetroPCS from
any liability, including reasonable costs and attorney fees, and is
entitled to control the defense and disposition of any IP claim
with attorneys of its choice. NS Agreement § 7.4. TCS's
construction of § 7.4 would limit its duty to defend to paying
"reasonable costs and attorney fees" after the Texas suit is
resolved.

---

[5] *See also Bryde v. CVS Pharm.*, 878 N.Y.S.2d 152, 154 (N.Y. App.
Div. 2009); *Brasch v. Yonkers Constr. Co.*, 762 N.Y.S.2d 626, 629
(N.Y. App. Div. 2003).

11

This interpretation is inconsistent with § 7.4's contemplation of a role for TCS during litigation.  TCS's right to solely control the defense or disposition of any IP claim shows that the duty to defend arises before resolution of a suit implicating TCS's products.  TCS's narrow interpretation of the duty to defend would render that right meaningless.  "[A] court should not adopt an interpretation which will . . . leave a provision of a contract without force and effect."  *Ruttenberg v. Davidge Data Sys. Corp.*, 626 N.Y.S.2d 174, 177 (N.Y. App. Div. 1995).

Further, under § 7.4, the duty to defend arises from "any . . . *claim* . . . or *allegation*" that MetroPCS's use of TCS products infringes another's patent rights. NS Agreement § 7.4. (emphasis added).  Accordingly, TCS's motion to dismiss the duty to defend claim as premature must be denied.

B.   TCS's Motion to Compel Arbitration

TCS argues that even if MetroPCS's claims survive a 12(b)(6) motion, MetroPCS should be compelled to arbitrate those claims.[6]

"In the Fourth Circuit, a litigant can compel arbitration . . . if he can demonstrate (1) the existence of a dispute between the

---

[6] Under § 3 of the Federal Arbitration Act, "[i]f any suit or proceeding be brought . . . upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]"  9 U.S.C. § 3 (2006).

parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction . . . to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002).

Under §§ 9.2 and 9.3 of the NS Agreement, the parties agreed to a two-step procedure for settling disputes.  First:

> [a] senior executive of either party may, upon notice
> to the other party of a dispute arising out of or
> related to this Agreement . . . elect to utilize a
> non-binding resolution procedure whereby each party
> presents its position at a hearing before a panel
> consisting of one senior executive of each of the
> parties and, if such senior executives can agree upon
> such an individual, a mutually acceptable neutral
> advisor.  If a party elects to use th[is] procedure .
> . ., the other party shall participate in good faith.

NS Agreement § 9.2.  If the parties are not successful in resolving the dispute through this procedure, "the Dispute may be submitted to any federal or state court of competent jurisdiction sitting in and for the state of Maryland."  *Id*. § 9.3.

The NS Agreement lacks a written agreement to arbitrate.  TCS attempts to avoid this problem by arguing that MetroPCS's claims under the NS Agreement may be arbitrated pursuant to an arbitration provision in a 2003 contract between the parties (the "E9-1-1

Agreement"), which also involves LBS technology that may be the subject of the Texas suit.

Under the E9-1-1 Agreement, TCS provides MetroPCS with location-based services to support 9-1-1 emergency services on its wireless network.  Def.'s Mot. to Dismiss 2; Ex. A. [hereinafter "E9-1-1 Agreement"].  The E9-1-1 Agreement contains a provision similar to § 7.4 of the NS Agreement and requires TCS to defend and indemnify MetroPCS in patent infringement actions involving TCS products.  Like the NS Agreement, the E9-1-1 agreement contemplates a two-step procedure for resolving disputes; the first step is a hearing before senior executives of both companies.  E9-1-1 Agreement § 9.2.  However, unlike the NS Agreement, the E9-1-1 agreement requires arbitration.[7]  *Id.* § 9.3.

MetroPCS contends that services provided under the E9-1-1 Agreement are involved in the Texas suit and has filed a demand for arbitration in which it seeks defense and indemnification from TCS. Def.'s Mot. to Dismiss, Ex. B.

---

[7] Under § 9.3 of the E9-1-1 Agreement, if "a claim, dispute or controversy (a "Dispute) arises out of or relates to this Agreement, or its breach, and parties have not been successful in resolving such Dispute through negotiation [through the non-binding mediation] described in Section 9.2, the Dispute will be decided by arbitration administered by the American Arbitration Association [.]"  E9-1-1 Agreement § 9.3.

TCS argues that this case should be consolidated with the pending E9-1-1 arbitration because the NS Agreement dispute "significantly relates to" the E9-1-1 dispute.

The Fourth Circuit has found arbitration clauses like the E9-1-1 agreement may encompass "significantly related" disputes that do not "arise under" the arbitration contract.  *See American Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 93 (4th Cir. 1996).[8]  However, such disputes are arbitrable only when they "derive from" the contract with the arbitration clause or when "proof of the [disputed] claim depends on the terms and existence of" that contract.  *See Long v. Silver*, 248 F.3d 309, 317-19 (4th Cir. 2001).

Any TCS duty to defend and indemnify MetroPCS for products supplied under the NS Agreement would not derive from or depend on the E9-1-1 Agreement.  Section 7.4 of the NS Agreement creates the duties at issue in this case.  Although the E9-1-1 arbitration may involve related issues, MetroPCS's claims here are not dependent upon or derived from the E9-1-1 Agreement.  TCS's obligations under

---

[8] *See also Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) ("In American Recovery, we held that a broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained.").

the NS Agreement appear to be fully determinable without reference to the E9-1-1 Agreement.

Accordingly, because the NS Agreement does not contain an arbitration clause and the dispute in this case does not clearly, "significantly relate" to the E9-1-1 Agreement, TCS's motion to compel arbitration must be denied.

C. TCS's Motion to Stay Pending the Outcome of the E9-1-1 Arbitration

Alternatively, TCS asserts that this case should be stayed pending the outcome of the E9-1-1 arbitration because permitting both proceedings to move forward would (1) be inefficient and (2) risk inconsistent or anomalous results.

"[W]hen the issues before a district court are not 'issue[s] referable to arbitration' [under the Federal Arbitration Act], the court, while not required to stay the litigation, has the discretionary power to do so."[9]  The decision whether to stay non-arbitrable claims pending a related arbitration is guided by the desire to avoid confusion and inconsistent results and considerations of judicial economy.  *See American Home Assurance Co. v. Vecco Concrete Constr. Co., Inc*., 629 F.2d 961, 964 (4th Cir. 1980).

---

[9] *United States ex rel. MPA Construction v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 940 (D. Md. 2004) (*citing American Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 97 (4th Cir. 1996)).

These factors weigh against a stay.  Contrary to TCS's contention that the "central question to be answered [in this case and in the E9-1-1 arbitration] is the same," the two proceedings involve distinct questions.  The central question here is whether the Texas suit triggered TCS's duty to defend MetroPCS under § 7.4 of the NS Agreement.  As explained above, answering this question will require a determination of the products TCS provides under the NS Agreement and whether those products are alleged to infringe the Texas plaintiffs' patents.

The conclusions reached in this suit will have little bearing on the arbitration, which will presumably concern the construction of the E9-1-1 Agreement.  The risk of inconsistent or anomalous results is low.

Separate proceedings are required because separate questions are presented before this Court and the arbitrator.  Staying this case will merely postpone the determination of issues that must be determined by this Court.  A postponement will not conserve the resources of the Court, the parties or the arbitrator. Judicial economy does not support a stay.  Accordingly, TCS's motion to stay will be denied.

D. MetroPCS's Motion to Take Judicial Notice

Finally, MetroPCS asks the Court to take judicial notice of "TCS' Contradictory Litigation and Arbitration Filings." Specifically, MetroPCS would like the Court to notice that while TCS has sought to dismiss or stay this case in favor of arbitration, it has sought to have the E9-1-1 arbitration dismissed or stayed in favor of this case. MetroPCS's concern is that TCS's "contradictory" filings may result in "simultaneous stays." Because TCS's motion to stay this case will be denied, MetroPCS's concerns are groundless. Accordingly, the motion to take judicial notice will be denied.

III. Conclusion

For the reasons stated above, TCS's motion to dismiss for failure to state a claim upon which relief can be granted will be granted in part and denied in part; its motion to compel arbitration will be denied; and its motion to stay will be denied. MetroPCS's motion to take judicial notice will be denied.

October 19, 2009                    _____/s/_____
Date                                William D. Quarles, Jr.
                                    United States District Judge