IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

METROPCS WIRELESS, INC.,

          Plaintiff,

v.

TELECOMMUNICATION SYSTEMS, INC.,

          Defendant.

Civil Action No. 1:09-CV-00601-WDQ

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL RESPONSES TO WRITTEN DISCOVERY REQUESTS AND FOR SANCTIONS

Defendant TeleCommunication Systems, Inc. ("TCS"), by its undersigned counsel and pursuant to Federal Rule of Civil Procedure 37(a) and Local Rule 104.8, hereby moves this Court for an order compelling Plaintiff MetroPCS Wireless, Inc. ("MetroPCS") to respond fully to TCS's First Set of Interrogatories, and to produce documents responsive to TCS's First Request for Production of Documents.  Further, pursuant to Federal Rules 26(g)(3) and 37(d), TCS moves for sanctions against MetroPCS for its excessive and burdensome document production, which is an improper "data dump" and an abuse of the discovery process.  TCS asks this Court to award TCS reasonable attorneys' fees and costs caused by MetroPCS's violation, including fees and costs related to reviewing the document production and filing this motion to compel.

## INTRODUCTION

MetroPCS has abused the discovery process by producing an improper "data dump" of over 550,000 pages worth of documents without an index, most of which are completely nonresponsive to TCS's discovery requests.  Indeed, MetroPCS's counsel admitted that

MetroPCS did *not* make a reasonable effort to tailor its document production toward the specific items and categories of documents requested by TCS, but simply produced *exactly* what it had produced to the plaintiffs in the underlying Texas Litigation.   MetroPCS's actions are not justified by TCS's discovery requests, which in most instances requested only "documents sufficient to identify" the information sought, specifically to avoid the danger of burdensome and overbroad discovery.

As recently as last Friday, February 5, 2010, counsel for MetroPCS has asserted in another proceeding that the "principal focus of the [Texas Litigation] is E911 services," not the Location Based Services ("LBS") before this Court.   Many of the documents in MetroPCS's production, therefore, relate to E911 rather than LBS, and thus are irrelevant to this Court's inquiry.   Such a "cut and paste" production makes a mockery of the discovery process, and improperly shifts the entire burden and expense of discovery to TCS.   MetroPCS's actions are contrary to both the letter and the spirit of Federal Rules 26, 33, and 34, and constitute sanctionable conduct under both Rule 26(g)(3) and Rule 37(d).

Further, MetroPCS's burdensome production is both overinclusive and underinclusive. Despite producing hundreds of thousands of pages of irrelevant and nonresponsive documents, MetroPCS has failed to produce several categories of documents it has agreed to produce, including the invalidity contentions, prior art, and claim construction documents asserted by any party in the Texas Litigation.   Such documents are vital to this Court's determination of the merits of the lawsuit.   MetroPCS's data dump has also rendered several of its interrogatory responses useless because MetroPCS simply directs TCS to its document production without specifying the documents to which it refers.   This is tantamount to a needle in the proverbial haystack, and is a violation of Rule 33(d)(1).

2

MetroPCS's discovery abuses are particularly egregious in light of its repeated efforts to mislead this Court and stymie TCS's defense.  For example, MetroPCS has maintained from the beginning, and continues to maintain, that TCS is the *only* entity that provides MetroPCS with LBS services that are the subject of the Texas Litigation.  However, upon TCS's limited review of the few responsive documents included in MetroPCS's data dump, it was discovered that MetroPCS receives position determining entity (PDE) services from Loopt, Inc. ("Loopt") that are virtually identical to the PDE services TCS agreed to provide to MetroPCS under the NS Agreement, and that MetroPCS made a decision to transfer its LBS applications from TCS's PDE to Loopt's PDE ***prior to the commencement of this lawsuit.***  In addition, TCS sought indemnification from Loopt regarding the Texas Litigation ***on the same day*** that it sought indemnification from TCS, and Loopt refused for virtually the same reasons that TCS refused.  TCS served a third-party subpoena on Loopt on December 8, 2009, but Loopt has refused to produce documents, stating that MetroPCS is in possession of all relevant documents, and that MetroPCS communicated to Loopt that it would produce responsive documents.  Given the documents that have been produced thus far, it is impossible to determine the status of MetroPCS's indemnification demand on Loopt.

## FACTUAL BACKGROUND

### I.    TCS's Discovery Requests and MetroPCS's Responses

TCS served MetroPCS with its First Set of Interrogatories and First Requests for Production of Documents on November 27, 2009.  *See* Exhibit A (Interrogatories); Exhibit B (Requests for Production).  At the same time, TCS sent to MetroPCS a draft Protective Order, identical to the Protective Order the two parties had executed in the concurrent arbitration proceeding.  MetroPCS requested, and TCS agreed to, an extension of MetroPCS's time to

respond to TCS's discovery requests.  A stipulation was filed with this Court on December 1, 2009, stating that MetroPCS would respond to TCS's discovery requests on or before January 8, 2010.  TCS received MetroPCS's written responses to its discovery requests on January 8, 2010, but did not receive any documents at that time.  *See* Exhibit C (Responses to Interrogatories); Exhibit D (Responses to Requests for Production).

In its responses and objections to TCS's discovery requests, MetroPCS stated that it would produce documents "once an appropriate protective order . . . has been entered in this case," despite the fact that TCS had sent MetroPCS a draft protective order six weeks previously, and had never received a response from MetroPCS.  When TCS reminded MetroPCS of this fact, MetroPCS responded with minor edits, and the Protective Order was filed with this Court on January 13, 2010.   Further, as detailed below, MetroPCS responses contained baseless objections, incomplete and vague answers to certain interrogatories, and promises to produce certain documents that have not yet been produced.

TCS's counsel sent a letter to MetroPCS's counsel on January 21, 2010, reminding MetroPCS that it had produced no documents, despite having responded to TCS's discovery requests nearly two weeks previously, and despite having been in possession of those discovery requests for nearly two months.  *See* Jan. 21, 2010 letter from Hugh Marbury to Brett Govett, attached as Exhibit E.

TCS's counsel sent a further letter to MetroPCS's counsel on January 22, 2010, detailing TCS's objections to MetroPCS's discovery responses, and requesting that MetroPCS supplement its responses accordingly.  *See* Jan. 22, 2010 letter from Hugh Marbury to Brett Govett, attached as Exhibit F.  MetroPCS has not responded to TCS's January 22 letter.

## II.     MetroPCS's "Data Dump" Document Production

On January 26, 2010, MetroPCS sent to TCS a hard drive containing 552,159 pages of documents.  There was no index included with the production.  MetroPCS produced an additional 1,247 pages of documents on January 27 and February 2.  TCS's initial review of MetroPCS's deliveries revealed that many of the documents produced were entirely nonresponsive to TCS's discovery requests – documents regarding E9-1-1 programs, sales pitches from unrelated companies, irrelevant articles and patents, publicly available SEC filings, etc. – and that MetroPCS had failed to produce several categories of documents it had agreed to produce.

TCS's counsel sent MetroPCS's counsel a letter on January 29, 2010, objecting to MetroPCS's improper data dump, and demanding an index to the production, production of the documents it had agreed to produce, and Bates numbers specifying the location of documents referenced in its responses to TCS's interrogatories.  *See* Jan. 29, 2010 letter from Hugh Marbury to Brett Govett, attached as Exhibit G.

## III.    MetroPCS's Admission That Its "Data Dump" Production Was Merely a Copy of Its Production in the Underlying Litigation

MetroPCS's counsel sent TCS's counsel a letter on February 3, 2010.  *See* Feb. 3, 2010 letter from Brett Govett to Hugh Marbury, attached as Exhibit H.  This letter does not respond to most of TCS's statements about specific interrogatories and document requests.  Instead, Mr. Govett disagrees with TCS's accusation that MetroPCS's production was an improper data dump, stating:

> On more than one occasion, you stated to me that it was easy for MetroPCS to produce documents because all MetroPCS needed to do was to provide what had already been produced in the underlying Texas litigation.  We produced to you what you

> requested and what TCS would need to provide the defense it was ordered to provide. **The documents were produced in the same manner as they were produced in the underlying Texas litigation.**

Feb. 3 letter, Ex. H (emphasis added).   Mr. Govett's statement represents a serious misunderstanding of his communications with Mr. Marbury and of MetroPCS's discovery obligations.   What Mr. Marbury had previously communicated to Mr. Govett was that it should be easy for MetroPCS to produce documents because *it had already collected documents* for production in the Texas Litigation.   Not once did Mr. Marbury suggest that MetroPCS should simply produce *everything* it had produced in the Texas Litigation, regardless of whether such documents were responsive to TCS's document requests.

As for specific responses, Mr. Govett states that "the prior art is generally found at MPCS-0000001-MPCS-0007462," *id.*, a statement that is both unhelpful and untrue.   For example, MPCS-0000001 is a 2003 sales letter to MetroPCS from a company called TechoCom, advertising its E9-1-1 services.   This document is not only *not* an example of prior art asserted in the Texas Litigation, it is in no way responsive to any of TCS's discovery requests.[1]

## ARGUMENT

**I.     MetroPCS's Document Production Is an Improper "Data Dump" That Is Sanctionable Under Rule 26(g)(3)**

MetroPCS's production of well over 550,000 pages worth of documents is an abuse of the discovery process, in that it is unreasonable, unduly burdensome and expensive, causes unnecessary delay, and needlessly increases the costs of litigation.   As such, TCS is entitled to

---

[1] Mr. Govett's February 3 letter contains additional misstatements.   The letter states that "[t]he infringement contentions specifically recite the PDE, which is provided by TCS."   Feb. 3 letter, Ex. H.   Putting aside the fact that TCS is not the only entity that provides PDE services to MetroPCS, neither TCS nor any other PDE provider appears as an "accused instrumentality" in the infringement contentions.   *See* Amended Infringement Contentions,

sanctions against MetroPCS under Rule 26(g)(3).  Rule 26(g) states that, by signing responses to

discovery requests, an attorney or party certifies that such responses (including the production of

documents) are:

> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at state in the action.

Fed. R. Civ. P. 26(g)(1)(B).  The Rule also states that such certification is made "to the best of

the person's knowledge, information, and belief *formed after a reasonable inquiry*."  Fed. R.

Civ. P. 26(g)(1) (emphasis added).  In addition, Rule 26(g)(3) provides that:

> If a certification violates this rule without substantial justification, the court, on motion or on its own, *must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(3).

Simply put, MetroPCS's certification violates Rule 26(g) because admittedly *no such*

*reasonable inquiry was taken*.  Rather than take the time to choose documents responsive to

TCS's specific discovery requests, MetroPCS unreasonably shifted its burden to TCS by simply

copying its entire production from the Texas Litigation—which MetroPCS acknowledges is

"primarily" about an unrelated technology—leaving TCS with the unnecessary expense and

delay caused by reviewing such an excessive production.  Further, MetroPCS has demonstrated

---

attached as Exhibit I.

its intent to unnecessarily delay the litigation.  MetroPCS filed a Motion for Partial Summary Judgment (Doc. No. 28) on November 13, 2009, before discovery had even begun.  MetroPCS has opined on numerous occasions that it believes that discovery is unnecessary to resolve this dispute, despite the Court's holding to the contrary.  *See* Memo. Op. (Doc. No. 23) at 8. MetroPCS's data dump is therefore another way to prevent TCS from obtaining useful, responsive documents necessary to oppose MetroPCS's claims, thereby causing unnecessary delay to the litigation.

Judge Grimm recently stated that Rule 26(g) "is intended to impose an 'affirmative duty' on counsel to behave responsibly during discovery, and to ensure that it is conducted in a way that is consistent 'with the spirit and purposes' of the discovery rules."  *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357 (D. Md. 2008) (holding that boilerplate objections to discovery requests could be considered a failure to make a "reasonable inquiry," and therefore a violation of Rule 26(g)).  Judge Grimm noted that, according to the Advisory Committee's Notes to Rule 26(g):

> . . . Rule 26(g) is *designed to curb discovery abuse* by explicitly encouraging the imposition of sanctions.  The subdivision provides a *deterrent* to both **excessive discovery** and *evasion* by imposing a certification requirement that obliges each attorney to *stop and think about the legitimacy of a discovery request, a response thereto, or an objection . . . .*

*Id.* (quoting Fed. R. Civ. P. 26(g) advisory committee's notes to the 1983 amendments) (italics in original, bold emphasis added).

The standard for whether an attorney or party has made a "reasonable inquiry" for purposes of Rule 26(g) is whether the attorney or party has made "a reasonable effort to assure that the client has provided all the information and documents **responsive to the discovery**

8

*demand*." *Poole v. Textron, Inc.*, 192 F.R.D. 494, 503 (D. Md. 2000) (quoting Fed. R. Civ. P. 26(g) advisory committee's notes to the 1983 amendments) (emphasis added).  Mr. Govett's letter reveals that MetroPCS has made **no** effort to assure that the documents produced are in any way responsive to TCS's discovery requests, or that the documents produced included all documents responsive to TCS's discovery requests – instead, it produced a data dump of all documents produced in a litigation which MetroPCS asserts is primarily about another technology.

By signing the responses to TCS's discovery requests on behalf of MetroPCS, Mr. Govett certified that MetroPCS had made a reasonable inquiry in order to produce documents responsive to TCS's requests, and that its responses and production were neither unreasonable nor unduly burdensome or expensive, and were not intended to cause unnecessary delay or needlessly increase the cost of litigation.  MetroPCS's actions and its correspondence have shown that such certification was false and violative of Rule 26(g), and therefore the Rules require that this Court impose sanctions against MetroPCS.  *See* Fed. R. Civ. P. 26(g)(3) (stating that the court "***must impose***" an appropriate sanctions against a party whose certification violates the rule).

TCS requests that this Court issue an order compelling MetroPCS to abide by its discovery obligations and redo its document production, producing only those documents that it determines, after a reasonable inquiry, to be responsive to TCS's discovery requests.  In the alternative, TCS requests that this Court issue an order compelling MetroPCS to produce a detailed index to its 550,000 pages of document production.  In addition, TCS requests that this Court order MetroPCS to pay TCS's expenses related to reviewing its document production and preparing this Motion.

9

## II.     MetroPCS Unreasonably Seeks to Narrowly Restrict the Definition of "Location Based Services"

The technology at issue in this case has generally been referred to as "Location Based Services" for wireless handsets.  Location Based Services, or LBS, are GPS-enabled software applications that allow a customer's cell phone to act as a concierge or co-pilot.  Popular commercial LBS applications are Google Maps, MetroNavigator, and Sprint Family Locator.

TCS's discovery requests defined the term "Location Based Services" to mean:

> any and all products and services which incorporate, use and/or employ location information of a mobile device.  "Location Based Services" include, but are not limited to, any and all products and services accused of infringement in the EMSAT Litigation. "Location Based Services" also include, but are not limited to, products and services set forth at www.metropcs.com under the categories "Mobile Web & Social Networking" and "Maps and Directions" which incorporate, use and/or employ location information of a mobile device.

Ex. A at 3; Ex. B at 3.  In its responses, MetroPCS objected as follows:

> MetroPCS objects to the Definition of "Location Based Services" as misleading in that TCS seeks to give "Location Based Services" a meaning other than the Location Based Services provided to MetroPCS by TCS that give rise to the infringement claims asserted in *EMSAT Advanced Geo-Location Technology, LLC et al. v. MetroPCS Communications, Inc. et al.*, Case No. 2:08-CV-381 (E.D. Tex. 2008) ("the Texas Suit").  Because TCS defines "Location Based Services" to give it an unreasonably broad and legally irrelevant scope, Requests that include "Location Based Services" are overly broad, unduly burdensome, and therefore, are not reasonably calculated to lead to the discovery of admissible evidence.

Ex. C at 2; Ex. D at 2.  Indeed, in objections to several specific interrogatories, MetroPCS stated that TCS's definition of Location Based Services would include "any and all products and/or services used to operate a wireless network." *See, e.g.*, Ex. C at 3.

EAST\42802896.1

MetroPCS's objection is facetious. Both MetroPCS and TCS are in the telecommunications industry and are quite familiar with Location Based Services; indeed, the parties entered into a Network Services Agreement for the provision of Location Based Services which is the centerpiece of this litigation. MetroPCS certainly knows what "Location Based Services" means as a term of art in the telecommunications industry, and cannot honestly believe that TCS is seeking documents regarding MetroPCS's cell towers or handsets. Regardless, TCS agreed in its January 22, 2010 letter to amend the first sentence of the definition to refer to "any and all products and services which incorporate, use and/or employ location information (**i.e., GPS location information or other means of supplying longitude and latitude**) of a mobile device," in order to alleviate MetroPCS's expressed concerns of overbreadth. *See* Jan. 22 letter, Ex. F, at 1.

Further, MetroPCS cannot reasonably claim that the definition of "Location Based Services" should be restricted to only "the Location Based Services provided to MetroPCS by TCS that give rise to the infringement claims asserted in" the Texas Litigation. The central question of this lawsuit is whether the LBS allegations in the Texas Litigation refer to services provided by TCS or to other types of services MetroPCS receives from third parties. While MetroPCS may argue that TCS and only TCS is responsible for the alleged infringement, MetroPCS cannot simply provide information in accordance with its desired outcome for the litigation. TCS is entitled to discovery regarding Location Based Services *other than* the services TCS agreed to provide under the NS Agreement, in order to aid the Court in its determination of exactly what is accused in the Texas Litigation, and whether those accusations refer to MetroPCS's use of services provided by TCS or by some other third party.

11

This dispute is critical to TCS's ability to present a defense in this case. Despite MetroPCS's consistent allegation that TCS and only TCS is responsible for the LBS infringement allegations, TCS has learned that Loopt provides MetroPCS with LBS services virtually identical to those TCS agreed to provide under the NS Agreement, and that MetroPCS decided to transfer its LBS applications from TCS's position determining entity (PDE) to Loopt's PDE well before the commencement of this lawsuit. Further, as stated previously, MetroPCS sought indemnification from Loopt on the same day that it sought indemnification from TCS. Other than a single letter from Loopt refusing to indemnify MetroPCS, the status of MetroPCS's demand on Loopt is unknown.

TCS requests that the Court issue an order compelling MetroPCS to supplement its responses to interrogatories and document requests in accordance with the amended definition as proposed in Mr. Marbury's January 22 letter.

## III.   MetroPCS's Responses to TCS's Interrogatories 2, 5, 7, 8, and 15-18 Are Deficient

### A.   *MetroPCS Fails to Specify Records to Be Reviewed Under Rule 33(d)*

In interrogatories 15-18, TCS requested (#15) all prior art that MetroPCS has asserted or will assert in the Texas Litigation, (#16) all expenses and costs incurred in the Texas Litigation, (#17) an identification of the links between such expenses and the individual claims and/or defenses asserted in the Texas Litigation, and (#18) facts on which MetroPCS bases its contention that EMSAT alleges that MetroPCS's use of TCS's services infringes the Patents-in-Suit. In its responses to these four interrogatories, MetroPCS provides the same substantive response – "pursuant to Federal Rule of Civil Procedure 33(d), the answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing responsive

and non-objectionable documents to be produced in response to TCS' First Set of Requests for Document Production."

MetroPCS's responses incorrectly invoke Rule 33(d), which states that a responding party may only respond with reference to a document production if it does so by "*specifying the records that must be reviewed*, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  Fed. R. Civ. P. 33(d)(1).  MetroPCS does not specify to which documents it refers, but rather makes a blanket statement, suggesting that TCS should bear the burden of sifting through over 550,000 pages of documents in order to learn the answers to its interrogatories.  This is not how Rule 33(d) is intended to be used.

The standard way to specify the records referred to in an interrogatory response, and thus comply with Rule 33(d)(1), is for the responding party to "specifically identify responsive documents by Bates Number, which enables [the interrogating party] to locate and identify responsive documents."  *Umbach v. Carrington Inv. Partners, LP*, No. 3:08-cv-484(EBB), 2009 WL 3287537, at *3 (D.Conn. Oct. 9, 2009).  "Crucial to this inquiry is that the producing party have adequately and precisely specified for each interrogatory, the actual documents where information will be found.  *Document dumps or vague references to documents do not suffice.*"  *SEC v. Elfindepan, S.A.*, 206 F.R.D. 574, 576 (M.D.N.C. 2002) (emphasis added).

Indeed, were a court to permit such a document dump under the guise of Rule 33(d), "discovery would be thwarted at every turn."  *John W. Daniel & Co., Inc. v. Durham Pub. Schools Bd. of Educ.*, No. 1:07CV61, 2008 WL 2781164, at *1 (M.D.N.C. March 7, 2008) ("It makes no sense for Plaintiff to argue, as it does in giving 40,000 documents to Defendants, that 'going through the documents is too burdensome for us, therefore you do it.'").

13

MetroPCS makes no attempt in its responses to specify which documents it refers to with regard to Interrogatories 15 through 18.  After TCS objected in its January 29, 2010 letter, citing Rule 33(d)(1), Mr. Govett responded only that "the prior art is ***generally*** found at MPCS-0000001-MPCS-0007462."  Feb. 3 letter, Ex. H.  Even if this statement were true (which it is not), directing TCS to a range comprising over 7000 pages of documents[2] does not meet the requirements of Rule 33(d)(1).  *See Calkins v. Pacel Corp.*, No. 3:07cv00025, 2008 WL 2311565, at *4  (W.D. Va. June 4, 2008) ("Clearly, a general reference to a 92-page list of documents, with no indication as to which of the documents, if any, contain answers to the interrogatory, does not 'adequately and precisely specif[y] . . . the actual documents where information will be found' and therefore fails to comply with Rule 33(d).").[3]

Further, Interrogatory No. 18 asks MetroPCS to "[s]tate all facts on which METROPCS bases its contention that EMSAT  alleges in the EMSAT Litigation that METROPCS's use of the technology and services provided to METROPCS by TCS Infringes the Patents-In-Suit."  Such a contention interrogatory seeks information known only to MetroPCS that cannot be learned by reference to documents, and therefore MetroPCS's use of Rule 33(d) is improper.

> Production of documents under Rule 33(d) is inappropriate where, as here, the burden of ascertaining the answer is not the same for defendant as for the plaintiff.  Rule 33 production is suited to those discovery requests requiring compilation or analysis, accomplished as easily by one party as another, or where neither side has clear superiority of knowledge or familiarity with the documents.  Accordingly, Rule 33 is well-suited to reply to inquiries of an intensely objective nature.

---

[2] Mr. Govett's letter only refers to two tranches of responsive documents, leaving TCS to wonder the relevance of the remaining 545,000 pages of documents.

[3] As stated *supra*, the documents within the 7000-page range specified by MetroPCS do not relate to prior art asserted by the parties in the EMSAT litigation.

14

*United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 419-20 & n.29 (D.Md. 2005) (Gauvey, Magistrate J.) (ordering that "plaintiff should answer completely and specifically rather than by reference to documents" for interrogatories asking plaintiff to "[s]tate each fact on which [it] bases the contention . . .").

MetroPCS's response is improper because "only [MetroPCS] knows what facts and information it has relied upon to support the allegations made in its complaint against [TCS]." *Cleveland Constr., Inc. v. Gilbane Building Co.*, No. CIV A. 05-471-KSF, 2006 WL 2167238, at *5 (E.D.Ky. July 31, 2006).  "Thus, it would be necessary for [TCS] to be able to read [MetroPCS's] mind before [TCS] would be able to derive the answers to the disputed Interrogatories from [MetroPCS's] business records." *Id.*  Therefore, even if MetroPCS had specified by Bates number exactly which documents supported its answer to Interrogatory No. 18, such a response would still be inadequate because "documents themselves rarely, if ever, reveal contentions of fact or law.  A party reveals its contentions." *Elfindepan*, 206 F.R.D. at 576.

TCS requests that the Court issue an order compelling MetroPCS to specify by Bates number the exact documents it refers to in its responses to Interrogatories 15 through 17, and to answer Interrogatory No. 18 completely and specifically without reference to documents.

> **B.** *MetroPCS's Objections to Interrogatories 2, 5, 7, 8, and 18 Are Baseless and Its Responses Are Incomplete*

MetroPCS's answers to Interrogatories 2, 5, 7, 8, and 18 are incomplete, and its objections to those interrogatories are baseless, for the following reasons:

**INTERROGATORY NO. 2:**  Identify all Components of Location Based Services Provided to METROPCS by Loopt.

**METROPCS'S RESPONSE:**   OBJECTION.   MetroPCS objects to the Definition of "Location Based Services" as misleading in that TCS seeks to give "Location Based Services" a meaning other than the Location Based Services provided to MetroPCS by TCS which give rise to the infringement claims asserted in the Texas Suit.   Because TCS defines "Location Based Services" to give it an unreasonably broad and legally irrelevant scope, this interrogatory is overly broad, unduly burdensome, and therefore, is not reasonably calculated to lead to the discovery of admissible evidence.   Based on the definition that TCS seeks to impart to "Location Based Services," the "Components of Location Based Services" would seemingly include, and indeed does include based on the Definition of "Components of Location Based Services," any and all products and/or services used to operate a wireless network, and therefore, this interrogatory is overly broad, unduly burdensome, and not reasonably calculated to lead the [*sic*] discovery of admissible evidence.

Subject to and without waiving the foregoing objections, MetroPCS responds that the only relevant Location Based Service component provided by Loopt is the Loopt PDE service.

**TCS'S ARGUMENT:**   First, as stated *supra* Part II, MetroPCS's objection to the definition of "Location Based Services" is baseless, given its extensive knowledge of the use of "Location Based Services" as a term of art in the telecommunications industry.   Second, it is not MetroPCS's prerogative to decide which of its LBS applications and services are "relevant" to the dispute.   Based on TCS's preliminary investigation, it appears that it is Loopt's provision of services—not TCS's—that is the focus of the LBS portion of the Texas Litigation.   Indeed, MetroPCS has also requested that Loopt indemnify it for the Texas Litigation, further undermining its objection.   Until very recently, MetroPCS advertised Loopt LBS applications on its website.   *See* MetroPCS | Loopt, attached as Exhibit J.   Accordingly, MetroPCS should

16

supplement its response with information about Loopt applications and any other LBS Components Loopt provided to MetroPCS.

**INTERROGATORY NO. 5:**  For each product and service identified in Your response to Interrogatory No. 4, identify the date on which METROPCS began Providing or offering to Provide such service or product to its customers and the date on which METROPCS stopped Providing or offering to Provide such service or product to its customers and the date on which METROPCS stopped Providing or offering to Provide such service or product to its customers.

**METROPCS'S RESPONSE:**  OBJECTION.  This interrogatory seeks to combine two interrogatories into one.   As such, Interrogatory No. 5 will be treated as two separate interrogatories for purposes of the limits imposed by Federal Rule of Civil Procedure 33. Subject to and without waiving the foregoing objections, MetroPCS began offering MetroNavigator to its customers on December 30, 2008 and continues to do so.

**TCS'S ARGUMENT:**  MetroPCS's response to Interrogatory No. 4 included not just MetroNavigator, but also the TCS PDE and Loopt PDE services.  Additionally, MetroPCS has in the past offered LBS applications from Loopt, Research In Motion, and uLocate.  MetroPCS should supplement its response to include the dates on which MetroPCS began offering and stopped offering the TCS and Loopt PDEs, as well as LBS applications from these and other third parties.

**INTERROGATORY NO. 7:**  Identify all claims of the Patents-In-Suit asserted by EMSAT in the EMSAT Litigation for which METROPCS contends TCS must "defend, indemnify and hold harmless" METROPCS under the Network Services Agreement.

**METROPCS'S RESPONSE:**  Subject to and without waiving the foregoing objections, MetroPCS responds that TCS must defend, indemnify, and hold MetroPCS harmless under the

17

Network Services Agreement for one or more claims of U.S. Patent No. 5,946,611, one or more claims of U.S. Patent No. 6,324,404, one or more claims of U.S. Patent No. 6,847,822, one or more claims of U.S. Patent No. 7,289,763, and any other claims subsequently asserted by the plaintiffs in the Texas Suit based on the Location Based Services provided by TCS to MetroPCS.

**TCS'S ARGUMENT:**  First, MetroPCS's answer is nonresponsive because TCS asked for *specific claims* of the Patents-in-Suit, not general allegations about the patents as a whole. Second, MetroPCS's answer cannot be correct, because the Texas Plaintiffs have only alleged that MetroPCS's Location Based Services infringe U.S. Patent No. 7,289,763, and not the other three patents.  *See* Amended Infringement Contentions, attached as Exhibit I.  Because the Texas Plaintiffs allege that the other three patents are infringed only by MetroPCS's E911 services, and not its Location Based Services, MetroPCS cannot possibly claim that TCS is required to defend or indemnify it under the NS Agreement for patents that do not implicate Location Based Services.  This indicates that MetroPCS did not make a "reasonable inquiry" to assure that its response was correct.  MetroPCS should correct and supplement its response accordingly.

**INTERROGATORY NO. 8:**  For each claim identified in Your response to Interrogatory No. 7, provide a claim chart indicating on a element-by-element basis how the products or services TCS provides to MetroPCS are alleged to meet each claim element.

**METROPCS'S RESPONSE:** OBJECTION.  MetroPCS objects to this interrogatory as overly broad, unduly burdensome, and completely irrelevant to any claim or defense in the case as TCS' obligations to MetroPCS are not dependent on actual infringement of any of the claims asserted in the Texas Suit by either TCS or MetroPCS.  Therefore, this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.

**TCS'S ARGUMENT:**   TCS's interrogatory has nothing to do with "actual infringement."  Because the central question of this dispute is whether the allegations of the Texas Complaint trigger the language of Section 7.4 of the NS Agreement—that is, whether the Texas Plaintiffs allege that MetroPCS's use of TCS's services infringe the Patents-in-Suit—TCS is asking for MetroPCS's specific reasoning as to why it believes that the specific claims of the Patents-in-Suit relate to the specific services TCS agreed to provide under the NS Agreement.

**INTERROGATORY NO. 18:**   State all facts on which METROPCS bases its contention that EMSAT alleges in the EMSAT Litigation that METROPCS's use of the technology and services provided to METROPCS by TCS Infringes the Patents-In-Suit.

**METROPCS'S RESPONSE:**  OBJECTION.  MetroPCS objects to this interrogatory as completely irrelevant to any claim or defense in the case as TCS' obligations to MetroPCS are not dependent on actual infringement of any of the claims asserted in the Texas Suit by either TCS or MetroPCS.  Therefore, this interrogatory is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving any of the foregoing objections, MetroPCS responds that, pursuant to Federal Rule of Civil Procedure 33(d), the answer to this interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing responsive and non-objectionable documents to be produced in response to TCS' First Set of Requests for Document Production.

**TCS'S ARGUMENT:**   Again, this interrogatory has nothing to do with "actual infringement."  Rather, it asks for facts on which MetroPCS bases its central contention in this dispute – that the allegations in the Texas Complaint trigger the indemnification and defense language found in Section 7.4 of the NS Agreement.  Further, MetroPCS's inappropriate use of

19

Rule 33(d) was discussed *supra* Part III.A.  MetroPCS should respond fully to this interrogatory without reference to documents.

### C.     *TCS Is Entitled to Sanctions Against MetroPCS Under Rule 37(d) for MetroPCS's Failure to Answer Interrogatories*

Under Rule 37, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond."  Fed. R. Civ. P. 37(a)(4).  Accordingly, because MetroPCS's responses to Interrogatories 2, 5, 7, 8, and 15 through 18 are evasive and/or incomplete, TCS is entitled to sanctions against MetroPCS under Rule 37(d).  *See* Fed. R. Civ. P. 37(d)(1)(A)(ii).  TCS requests that the Court issue an order requiring MetroPCS to pay TCS's expenses incurred in reviewing MetroPCS's discovery responses and in preparing this Motion.

## IV.    MetroPCS's Responses to TCS's Requests for Production 2, 3, 5, 6, 9, 10, 11, 13, 14, and 15 Are Deficient

### A.     *MetroPCS Failed to Produce Documents It Agreed to Produce Under Requests for Production 5, 6, and 11*

TCS requested that MetroPCS produce, and MetroPCS agreed to produce, (#5) invalidity contentions, (#6) prior art, and (#11) claim construction documents asserted by any party in the Texas Litigation.  Despite the fact that it produced over 550,000 pages of documents, MetroPCS has not produced these important documents, presumably because they were not contained in the Texas Litigation production that MetroPCS copied and sent to TCS without making a reasonable inquiry into whether such documents were responsive, and whether the production contained all responsive documents.

In its February 3, 2010, MetroPCS stated that prior art was "generally" found within a 7000-page range of documents, which, as stated previously, is both unhelpful and untrue.  *See* Feb. 3 letter, Ex. H.  MetroPCS further stated that "[a]lthough the invalidity contentions do not

relate to any pending issue, we will produce them shortly." *Id.*   MetroPCS also agreed to produce "what few documents have been served" in the claim construction process.   *Id.* MetroPCS has not done so.

TCS requests that the Court enter an order compelling MetroPCS to produce documents responsive to these requests.

**B.**      ***MetroPCS's Objection to the Definition of "Location Based Services" in Requests for Productions 2, 3, 9, and 10 Is Baseless***

TCS asked MetroPCS to provide documents regarding (#2) entities that provide Components of Location Based Services to MetroPCS, (#3) all agreements between MetroPCS and those entities, (#9) all products and services provided to MetroPCS by those entities, and (#10) MetroPCS's contention that it does not infringe one or more of the Patents-In-Suit in the Texas Litigation.   MetroPCS objected to the definition of "Location Based Services," as described *supra* Part II, and insisted that the PDE service provided to MetroPCS by TCS is the only relevant LBS product or service.

Apart from TCS's arguments regarding the definition of "Location Based Services," *see supra* Part II, there is nothing in the Texas Complaint to indicate, and this Court has made no determination, that PDE services are the "only relevant product or service provided to MetroPCS by any third party," or that "the Location Based Services at issue in this case are those provided by TCS to MetroPCS."   It is not MetroPCS's prerogative to decide what is and is not relevant to the lawsuit.   MetroPCS should supplement these responses accordingly and produce documents in accordance with these requests that reference ***all*** entities that provide or provided MetroPCS with components of Location Based Services, including PDE services, LBS applications, and any other components.

21

C.    *MetroPCS's Objection to Requests for Production 13, 14, and 15 Is Baseless*

TCS requested that MetroPCS produce documents relating to (#13) negotiations of the NS Agreement, (#14) communications between the parties regarding the NS Agreement, and (#15) drafts of the NS Agreement.  In its responses to each of these requests, MetroPCS objects that "the final version of the Network Services Agreement speaks for itself and any information outside of the four corners of that document necessarily constitutes inadmissible parol evidence." MetroPCS's objection is baseless in that this Court has not made a determination that parol evidence would be inadmissible in this dispute, or, indeed, that the dispute can be resolved with reference solely to the final version of the NS Agreement.  As such, these requests seek evidence that is either admissible or is reasonably calculated to lead to the discovery of admissible evidence.  MetroPCS should supplement these responses accordingly and produce documents in accordance with these requests.

D.    *TCS Is Entitled to Sanctions Against MetroPCS Under Rule 37(d) for MetroPCS's Failure to Respond to TCS's Requests for Production*

Under Rule 37, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond."  Fed. R. Civ. P. 37(a)(4).  Accordingly, because MetroPCS's responses to Requests for Production 2, 3, 5, 6, 9, 10, 11, 13, 14, and 15 are evasive and or incomplete, TCS is entitled to sanctions against MetroPCS under Rule 37(d).  *See* Fed. R. Civ. P. 37(d)(1)(A)(ii).  TCS requests that the Court issue an order requiring MetroPCS to pay TCS's expenses incurred in reviewing MetroPCS's discovery responses and in preparing this Motion.

## CONCLUSION

For all the foregoing reasons, TCS's Motion to Compel and for Sanctions should be

GRANTED.  TCS requests that this Court issue an order compelling MetroPCS to:

- Redo its document production, making a reasonable inquiry to assure that all documents produced are responsive to TCS's discovery requests, or, in the alternative, provide a detailed index to its document production;

- Provide specific Bates numbers of documents to which MetroPCS refers in its answers to Interrogatories 15 through 17, pursuant to Rule 33(d)(1);

- Answer Interrogatory No. 18 completely and specifically and without reference to documents;

- Supplement its responses to Interrogatories 2, 5, 7, and 8;

- Produce documents responsive to Requests for Production 5, 6, and 11;

- Supplement its responses and produce documents responsive to Requests for Production 2, 3, 9, 10, 13, 14, and 15;

- Reimburse TCS's expenses related to reviewing MetroPCS's discovery responses, reviewing its document production, and preparing this Motion; and

- Any other relief the Court finds appropriate.


              _____/s/_____
              Hugh J. Marbury (Fed. Bar No. 24653)
              Benjamin D. Schuman (Fed. Bar No. 28829)
              DLA PIPER LLP (US)
              6225 Smith Avenue
              Baltimore, Maryland  21209
              410-580-3000 (telephone)
              410-580-3001 (facsimile)

              *Attorneys for Defendant TeleCommunication Systems, Inc.*